Kevin JOHNSON, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. SC92448.

Supreme Court of Missouri,
En Banc.

July 16, 2013.

Rehearing Denied Oct. 1, 2013.

Kent Denzel, Public Defender's Office, Columbia, for Johnson.

Daniel N. McPherson, Attorney General's Office, Jefferson City, for the State.

GEORGE W. DRAPER III, Judge.

Kevin Johnson (hereinafter, "Movant") was convicted by a jury of first-degree murder, section 565.202, RSMo 2000.[1] The trial court adopted the jury's recommendation and sentenced Movant to death. This Court affirmed his conviction in *State v. Johnson*, 284 S.W.3d 561 (Mo. banc 2009). Movant's motion for postconviction relief pursuant to Rule 29.15 was overruled by the motion court after an evidentiary hearing on five of the fourteen allegations of error. Movant appeals. This Court has exclusive jurisdiction over this appeal because a sentence of death was imposed. Mo. Const. art. V, sec. 10; order of June 16, 1988. The judgment denying Movant post-conviction relief is affirmed.

### Factual and Procedural History

On July 5, 2005, police officers were in the Meachem Park neighborhood investigating the ownership of a vehicle, suspected to be owned by Movant, who was wanted for a probation violation. At the same time, Movant's younger brother suffered a seizure inside his home. Movant's family sought assistance from the police officers who were already in the neighborhood. The police officers called for an ambulance, attempted to assist inside the house, and additional police officers, including Sergeant William McEntee (hereinafter, "Sgt. McEntee"), were called to the scene. Movant's brother was taken to the hospital, but he passed away from a preexisting heart condition.

Later that day, Movant retrieved his black, nine millimeter handgun from his vehicle. Movant told friends he believed the police officers were so busy looking for him that they let his brother die.

1. All further references herein are to RSMo 2000 unless otherwise indicated.

Sgt. McEntee returned to the Meachem Park neighborhood that evening, responding to a report of fireworks in the neighborhood. As Sgt. McEntee spoke with three juveniles about the fireworks report, Movant approached his vehicle. Movant squatted down to see through the passenger window and said something to the effect of, "you killed my brother." Movant then fired his handgun approximately five times. Sgt. McEntee was struck in the head and upper torso. One of the juveniles was struck in the leg. Movant reached inside Sgt. McEntee's car and took his gun.

Sgt. McEntee's car then rolled down the street, hitting a parked car and a tree. Sgt. McEntee got out of his car and fell forward onto his knees, unable to talk due to his injuries and blood in his mouth. Movant approached, told everyone who had gathered to get out of his way, and Movant shot Sgt. McEntee approximately two more times in the head. When Sgt. McEntee collapsed, Movant rifled through Sgt. McEntee's pockets. Movant shot Sgt. McEntee a total of seven times in the head and upper torso.

Movant left Meachem Park, cursing and claiming, "that m—— f—— let my brother die, he needs to see what it feels like to die." Movant spent several days at a family member's apartment while arrangements were made for him to surrender.

Movant was tried and convicted. Movant was sentenced to death. This Court affirmed the conviction and sentence on direct appeal. *Johnson*, 284 S.W.3d at 589.

Movant sought post-conviction relief through a Rule 29.15 motion. The motion court held an evidentiary hearing on five of his claims and entered judgment overruling Movant's motion in its entirety. Movant appeals the denial of post-conviction relief.

### Standard of Review

■ This Court will affirm the judgment of the motion court unless its findings and conclusions are clearly erroneous. Rule 29.15(k); *Johnson v. State*, 333 S.W.3d 459, 463 (Mo. banc 2011). The motion court's judgment is clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009) (quoting *Goodwin v. State*, 191 S.W.3d 20, 26 (Mo. banc 2006)). The motion court's findings are presumed correct. *McLaughlin v. State*, 378 S.W.3d 328, 336–37 (Mo. banc 2012). Additionally, a movant bears the burden of proving the asserted "claims for relief by a preponderance of the evidence." Rule 29.15(f).

■ Pursuant to Rule 29.15, an evidentiary hearing is not mandatory when the motion and record conclusively show that the movant is not entitled to relief. *Lamastus v. State*, 989 S.W.2d 235, 236 (Mo.App. E.D.1999). Courts "will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). To be entitled to an evidentiary hearing, Movant's motion must: (1) allege facts, not conclusions, warranting relief; (2) raise factual matters that are not refuted by the file and record; and (3) raise allegations that resulted in prejudice. *Id.*

■ To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test in order to prove his or her claims. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a movant must demonstrate that: (1) his

or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure. *Id.* at 687, 104 S.Ct. 2052.

■ A movant must overcome the strong presumption that counsel's conduct was reasonable and effective. *Smith v. State,* 370 S.W.3d 883, 886 (Mo. banc 2012). To overcome this presumption, a movant must identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Zink v. State,* 278 S.W.3d 170, 176 (Mo. banc 2009). Trial strategy decisions may be a basis for ineffective counsel only if that decision was unreasonable. *Id.* "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable...." *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006).

■ To establish relief under *Strickland,* a movant must prove prejudice. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State,* 68 S.W.3d 418, 429 (Mo. banc 2002) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Prejudice in a death penalty case is "a reasonable probability that, but for counsel's deficient performance, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death." *Forrest v. State,* 290 S.W.3d 704, 708 (Mo. banc 2009) (quoting *State v. Kenley,* 952 S.W.2d 250, 266 (Mo. banc 1997)).

### 1. Diminished Capacity

■ Movant asserts the motion court clearly erred in denying his claim that his trial counsel were ineffective for failing to investigate and present a diminished capacity defense. Movant claims counsel should have adduced testimony from two expert witnesses regarding his acute stress disorder (hereinafter, "ASD"), which would have demonstrated Movant was not capable of deliberation. Movant believes that had counsel presented this evidence to the jury, there was a reasonable probability that the jury would have imposed a life sentence.

Movant claims his trial counsel should have presented the testimony of psychologist Dr. Daniel Levin (hereinafter, "Dr. Levin") and Dr. Donald Cross (hereinafter, "Dr. Cross") to prove he suffered from ASD at the time of the murder. Both of Movant's experts testified at the post-conviction hearing. Dr. Levin testified he was retained by post-conviction counsel to conduct a psychological evaluation of Movant to determine whether he suffered from a mental impairment, mental illness, or mental defect at the time of the murder that would interfere with his ability to deliberate. In addition to the documents Dr. Levin reviewed in preparation for his trial testimony, Dr. Levin reviewed additional documents from the Division of Family Services and other records to form his opinion. Dr. Levin testified at the evidentiary hearing that he believed Movant suffered from ASD at the time of the murder and that ASD would have impacted Movant's ability to deliberate. Dr. Levin stated he could have prepared the same evaluation prior to trial.

Dr. Cross also was retained by post-conviction counsel to conduct a psychological evaluation of Movant. Dr. Cross interviewed Movant three times, interviewed other family members, and reviewed records. Dr. Cross testified it was his opinion Movant was experiencing ASD at the time of the murder and that ASD would have impaired Movant's ability to coolly reflect and make rational, reasonable decisions.

Movant's trial counsel also testified. Counsel Karen Kraft (hereinafter, "Kraft") testified she decided as a matter of trial strategy not to pursue a diminished capacity defense because she believed Movant's story was compelling in relationship to the time the murder happened after his brother's death. Kraft stated that had the defense presented a mental health expert, the State would have sought its own evaluation of Movant. Kraft testified she did not want to turn Movant's story into one of competing mental health experts.

Counsel David Steele (hereinafter, "Steele") testified he did not want to present evidence of all of the specific instances of abuse and neglect Movant suffered in his preschool years. Steele noted he believes a jury tends to have a certain tolerance and a certain time frame in which it is receptive to hearing evidence. Steele worried that he would lose the jury's attention and focus if it were to hear repetitive, cumulative evidence. Steele believed the jury could understand the emotions a person would go through after losing a brother and how those emotions would affect Movant's ability to deliberate. Steele stated there were risks in making something too complex for the jury to follow and a risk the State's expert would testify Movant did not suffer from a mental disease or defect. Accordingly, Steele testified there was a strategic decision made not to pursue a diminished capacity defense.

Counsel made a strategic decision as to how much evidence to present regarding Movant's upbringing during the penalty phase. Counsel did not present expert testimony regarding Movant's mental state, but counsel introduced testimony regarding Movant's social history, which formed the basis for believing Movant suffered from ASD. The jury heard that, as a young child, Movant was abandoned by both of his parents, and he went without food, clothing and decent shelter due to his mother's neglect, which stemmed from her drug addiction. Movant was sent to live in a series of homes and was abused physically by his aunt. Those experiences caused psychological scars that were reopened by the death of his brother. Counsel also elicited evidence of Movant's mental state at the time of the shooting.

The motion court made an extensive record of the evidentiary hearing on Movant's Rule 29.15 motion. The motion court found there was a reasonable strategic decision for not presenting a diminished capacity defense. It further found that Movant was not prejudiced because his counsel presented and argued evidence demonstrating his emotional state at the time of the murder. The motion court stated that Dr. Levin's testimony presented in the penalty phase was similar to the evidence which Movant now claims should have been presented.

"The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Vaca v. State*, 314 S.W.3d 331, 335 (Mo. banc 2010) (quoting *Anderson*, 196 S.W.3d at 37). No matter how ill-fated it may appear in hindsight, a reasonable choice of trial strategy cannot serve as a basis for a claim of ineffective assistance. *Id.*

The record indicates trial counsel was aware of a potential diminished capacity defense. However, counsel made a deliberate choice to not pursue this strategy. Counsel was concerned that the jury would lose focus or become alienated. Counsel also knew that if they presented expert testimony regarding Movant's diminished capacity, the State could then introduce its own experts, challenging the diagnosis of ASD. Movant's counsel presented testimony regarding Movant's upbringing and the mental anguish he was feeling at the time

of the shooting. Further, both of Movant's trial counsel believed the State had robust evidence of deliberation.

 "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Henderson v. State*, 111 S.W.3d 537, 540 (Mo.App. W.D.2003). Just because a jury returns a guilty verdict does not mean that defense counsel was ineffective. *Middleton v. State*, 103 S.W.3d 726, 737 (Mo. banc 2003). Movant has not overcome the strong presumption that counsel rendered adequate assistance, exercising reasonable professional judgment. *State v. Kinder*, 942 S.W.2d 313, 335 (Mo. banc 1996). Counsel were not ineffective for failing to present the testimony of Drs. Levin and Cross.

### 2. Brady[2] *violation*

Movant claims the motion court clearly erred in failing to grant him an evidentiary hearing on his assertion that the State failed to disclose that Jermaine Johnson (hereinafter, "Witness") received a benefit in exchange for testifying against Movant. Movant asserts that, had the State disclosed its role in continuing Witness' probation, there is a reasonable probability the jury would have looked less favorably on Witness' testimony, and the jury would not have found Movant deliberated. Movant believes there was clear error in not finding a *Brady* violation.

 If the State suppresses evidence that is favorable to a defendant and material to either the guilt or penalty phase, due process is violated. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. A *Brady* violation contains three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Taylor v. State*, 262 S.W.3d 231, 240 (Mo. banc 2008) (quoting *Anderson*, 196 S.W.3d at 36–37).

Witness testified for the State during the guilt phase of the trial. Witness stated he had been with Movant prior to Sgt. McEntee's shooting. Witness then saw Movant along side of Sgt. McEntee's vehicle. Witness stated he saw a gun in Movant's hand and saw him put the gun through the car window. When Witness heard the gunfire, he could see Sgt. McEntee's head jerking. Then he saw Movant open the car door and take Sgt. McEntee's pistol.

Further, Witness testified he only decided to speak with the police about Sgt. McEntee's murder after he violated his probation, hoping to receive some favorable treatment. He testified that he was still on probation and that a deal with the State had not been made in exchange for his testimony. Witness testified his probation had not been revoked for the incident.

On cross-examination, Movant's counsel inquired about the status of his probation and his interactions with Movant prior to the shooting. Witness stated he did not attend his probation hearing. Witness also testified that, in the moments before the shooting, Movant never made threatening comments or spoke about getting revenge for his brother's death.

**2.** *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Movant believes the State violated *Brady* by failing to disclose information that Witness expected a benefit in exchange for his trial testimony and that Witness received a continuance of his probation violation during the pendency of Movant's trial. The motion court found this claim was refuted by the record.

Both Movant and the State questioned Witness about his probation violation. Witness testified he had no deals with the State for favorable treatment in exchange for his testimony. Witness' motivation for testifying was presented to the jury. The motion court noted that Witness' probation violation had not "gone away" nor had his case been dismissed. Witness' testimony was corroborated by three additional witnesses who all saw Movant shoot Sgt. McEntee numerous times. Further, Movant's trial counsel elicited favorable testimony from Witness regarding Movant immediately prior to the shooting.

Movant fails to demonstrate that Witness' expectation of some unknown benefit prejudiced Movant, especially when some of the testimony elicited from Witness was favorable to Movant. Witness testified regarding his hopes the State would do something for him, but explained he did not receive a deal. This information was brought out on direct examination by the State and further explored by Movant's counsel in cross-examination. Movant presented an affidavit by Witness at the evidentiary hearing which stated that Witness only expected to receive a benefit; Witness had not received an undisclosed deal with the State. The motion court did not clearly err.

### 3. *Failure to object to video*

▇ Movant alleges the motion court clearly erred in denying his claim that his trial counsel were ineffective for failing to object to the admission of the reenactment video (hereinafter, "Exhibit 88") without an evidentiary hearing. Movant claims that Exhibit 88 was inadmissible as improper demonstrative evidence because it was an inaccurate representation of what he said had happened. Movant asserts that Exhibit 88 was unduly prejudicial because the persons who portrayed Movant and Sgt. McEntee were of different heights.

▇ A trial court has wide discretion in admitting evidence. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008). Demonstrative evidence may be admissible as long as it is both logically and legally relevant. *State v. Brown*, 337 S.W.3d 12, 15 (Mo. banc 2011). "Logical relevance refers to the tendency 'to make the existence of a material fact more or less probable.'" *Id.* (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). Legal relevance weighs the evidence's probative value against "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Freeman*, 269 S.W.3d at 427 (quoting *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002)). "Therefore, when assessing the relevance of demonstrative evidence, a court must ensure that the evidence is a fair representation of what is being demonstrated and that it is not inflammatory, deceptive or misleading." *Brown*, 337 S.W.3d at 15.

Movant claims that Exhibit 88 is not accurate because it does not represent his testimony and that the officers in Exhibit 88 were not the same height as Sgt. McEntee and he. Thus, Movant asserts Exhibit 88 was not a fair representation because it was deceptive and misleading.

▇ Movant's argument is incorrect. The trial court did not abuse its discretion in admitting Exhibit 88 because it was a fair representation of the evidence pre-

sented by the State. The State clarified that the officers in Exhibit 88 were not the same heights as Sgt. McEntee and Movant. While Exhibit 88 may not have been to Movant's satisfaction, it is clear Exhibit 88 was supported by the evidence adduced at trial. Had Movant's trial counsel objected, it would have been nonmeritorious. Trial counsel is not ineffective for failing to preserve a nonmeritorious argument. *Baumruk v. State,* 364 S.W.3d 518, 539 (Mo. banc 2012); *McLaughlin,* 378 S.W.3d at 357. The motion court did not clearly err.

### 4. Failure to object to presence of police officers

■ Movant alleges the motion court clearly erred in denying him an evidentiary hearing on his claim that his trial counsel were ineffective for failing to object to the presence of uniformed police officers in the courthouse. Movant believes the presence of the uniformed police officers in the courtroom and the hallways was designed to send a message to the jury to find Movant guilty.

■ The motion court found that the jury was sequestered throughout the proceedings and was not in contact with any of the spectators at any point in the trial proceedings or that any officer present caused any disturbance to the proceedings. The motion court further found Movant failed to demonstrate any prejudice. A trial court has wide discretion in determining whether to take action to avoid an environment for trial in which there is not a "sense or appearance of neutrality."

*State v. Baumruk,* 85 S.W.3d 644, 650 (Mo. banc 2002).

Here, Movant failed to demonstrate facts which would warrant relief. The only allegation Movant made in his post-conviction motion as to the number of police officers was that "there were a number of uniformed police officers in the hallway and in the courtroom." There is no reason to believe the sequestered jury came into contact with any officer who may have been in the courthouse hallway. Further, Movant fails to present any fact that would support the ultimate conclusion that the presence of officers in the courthouse could have influenced the outcome of Movant's trial. Movant only sets forth mere conclusions without any factual support.[3]

During the course of any trial, there could be a large number of uniformed police officers in the courthouse and walking in the hallways. Police officers are frequently called to testify in trials, which requires their presence in the courthouse. The motion court did not err.

### 5. Failure to impeach

Movant claims the motion court clearly erred in denying his claim that his trial counsel were ineffective for failing to impeach one of the State's witnesses with a prior inconsistent statement without an evidentiary hearing. Movant alleges trial counsel should have established that Norman Madison's (hereinafter, "Madison") statements to the police and at trial were allegedly inconsistent. Movant claims this

---

3. The dissent cites two cases, neither of which are Missouri cases, in which the defendants set forth compelling factual reasons wherein an evidentiary trial would be necessary to determine whether the presence of the police officers would have influenced the outcome of the trial. *See Ward v. State,* 105 So.3d 3, 5 (Fla.Dist.Ct.App.2012) (finding "there were enough officers in the audience to make 'the courtroom looked like a policeman's benefit.' "); *Shootes v. State,* 20 So.3d 434 (Fla. Dist.Ct.App.2009) (estimating the number of uniformed police officers to be between thirty-five and seventy). Movant set forth no such factual allegation.

inconsistency went to the issue of deliberation.

Failure to impeach a witness will not warrant post-conviction relief unless the testimony offers a defense to the charged crimes. *Black v. State*, 151 S.W.3d 49, 55 (Mo. banc 2004); *Baumruk*, 364 S.W.3d at 533. "If a prior inconsistent statement by a [S]tate's witness does not give rise to a reasonable doubt as to Movant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel." *State v. Twenter*, 818 S.W.2d 628, 640 (Mo. banc 1991).

The motion court found that Madison's prior inconsistent statements were brought out during his testimony. Further, the motion court found Movant failed to establish he suffered prejudice.

Movant fails to identify or allege any impeachable statement by Madison that would have offered him a viable defense. This mere allegation does not give rise to reasonable doubt of Movant's guilt. The motion court did not clearly err.

### 6. Failure to object during closing argument

Movant claims the motion court clearly erred in denying him an evidentiary hearing on his claim that his trial counsel was ineffective for failing to object to statements made by the state during closing argument. Movant asserts his trial counsel should have objected to statements by the State, which lessened the State's burden of proof regarding the definition of deliberation. The motion court found the proposed objections had no merit and Movant failed to demonstrate either a deficient performance or prejudice by his trial counsel.

Movant also raised this issue in his direct appeal, claiming there was plain error in the State's closing argument. *Johnson*, 284 S.W.3d at 573. This Court found the State properly defined "deliberation." *Id.* at 574. During the State's argument, "in the process of arguing the deliberation element [the State] used the terms 'deliberation,' 'cool reflection,' and 'conscious decision.'" *Id.* While the term "conscious decision" is not the language used in the instruction, this Court determined there was no plain error because the State recited the actual language of the instruction and the jury is presumed to follow the instructions of the court. *Id.*

However, the determination there was no plain error prejudice resulting from the State's comments does not end the inquiry because the *Strickland* standard of prejudice is less rigorous than the plain error standard. *Deck v. State*, 381 S.W.3d 339, 358 (Mo. banc 2012). *Strickland* prejudice requires only that there is a reasonable probability that the result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The "theoretical difference in the two standards of review will seldom cause a court to grant postconviction relief after it has denied relief on direct appeal...." *Deck v. State*, 68 S.W.3d 418, 428 (Mo. banc 2002) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). There are only a "small number of cases in which the application of the two tests will produce different results." *Id.*

"An attorney's failure to object during closing arguments only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial." *Zink*, 278 S.W.3d at 187. Even assuming, *arguendo*, Movant's counsel should have objected to the State's closing argument, Movant cannot demonstrate prejudice. The jury was instructed properly on deliberation. *Johnson*, 284 S.W.3d at 574. The State read the definition of deliberation in its closing argument while explaining how it believed the evi-

dence presented showed Movant knowingly caused Sgt. McEntee's death after Movant deliberated. "Any deficiencies in the [State's] argument were corrected by the trial court's instructions to the jury." *State v. Clemons,* 946 S.W.2d 206, 230 (Mo. banc 1997). "Counsel is not ineffective for failing to make non-meritorious objections." *McLaughlin,* 378 S.W.3d at 357. Given there was strong evidence presented demonstrating Movant's guilt and the trial court's instructions to the jury were proper, the motion court did not err.

### 7. Appearance before the jury in restraints

Movant claims the motion court clearly erred in denying him an evidentiary hearing on his claim that his trial counsel were ineffective for failing to object to the shackling device concealed under his clothing. Movant asserts that because he walked with a limp and made a noise when he sat, the shackling device was made "visible." Accordingly, Movant believes he was deprived of his right to a fair trial.

Movant admits that his leg restraint was concealed under his clothing and was not visible to the jury. He infers the jury knew he was shackled because he walked with a limp and there was a noise[4] when he sat. Movant argues that this was structural error in his trial, and he does not have to meet the standard for *Strickland* prejudice due to *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005).

This Court previously has addressed this argument. *Zink v. State,* 278 S.W.3d at 185–86. Additionally, the United States Supreme Court in *Deck* addressed the situation wherein the defendant's leg restraints were actually visible to the jury during his trial, finding a due process violation. *See Deck,* 544 U.S. at 633, 125 S.Ct. 2007. In comparison, the situation in *Zink* involved restraints that were concealed from the jury's view. *Zink,* 278 S.W.3d at 186. In *Zink,* this Court noted that the ruling in *Deck* "was limited to restraints that are visible, in that it expressly noted that the trial court did not explain 'why, if shackles were necessary, [the trial court] chose not to provide for shackles that the jury could not see—apparently the arrangement used at trial.'" *Zink,* 278 S.W.3d at 186 (quoting *Deck,* 544 U.S. at 634–35, 125 S.Ct. 2007).

Movant's allegations are similar to those in *Zink.* Movant's leg restraints were not visible, and there was no fact presented demonstrating the jury ever knew Movant was restrained. Movant does not allege prejudice; rather, Movant erroneously relies upon the belief there was structural prejudice such as in *Deck.* Movant has failed to meet his burden. The motion court did not clearly err.

### 8. Death penalty statute is unconstitutional

██ Movant alleges the motion court erred in denying him a hearing on his claim that Missouri's statutory scheme for the death penalty is unconstitutional. Movant claims Missouri's death penalty statute is unconstitutional as arbitrary and capricious in that it does not genuinely narrow the class of people eligible for the death penalty. Movant sought to introduce a law review article[5] in support of his claim.

---

**4.** Movant only asserts there was noise associated with his leg restraint and makes a bare allegation that someone could hear the noise when he sat.

**5.** Katherine Barnes et al., *Place Matters (Most): An Empirical Study of Prosecutorial Decision–Making in Death–Eligible Cases,* 51 ARIZ. L.REV. 305 (2009).

This exact argument has been addressed previously by this Court. *McLaughlin*, 378 S.W.3d at 357. "Claims challenging the constitutionality of the death penalty are for direct appeal and are not cognizable on a motion for post-conviction relief." *Id.* Movant fails to identify any reason for his failure to assert the constitutionality validity of the death penalty on direct appeal. The motion court did not clearly err in its decision to deny Movant an evidentiary hearing on this claim.

### 9. Sleeping jurors

Movant claims the motion court erred in denying him an evidentiary hearing on his claim that counsel were ineffective for failing to seek to replace an allegedly sleeping juror. Movant claims there was at least one juror who began to sleep during defense counsel's closing argument and that juror missed important points in his counsel's argument. Movant avers the juror would have to be dependent on the other jurors' opinions. Movant asserts he should have been given a hearing to determine whether Movant could demonstrate prejudice.

The motion court clearly did not err in denying Movant's claim, finding Movant made a mere allegation and failed to demonstrate any prejudice. Movant declared at least one juror might have fallen asleep during closing argument. This is not a fact that would entitle Movant to relief; there is no evidence that one or more jurors actually fell asleep. *See State v. Ferguson*, 20 S.W.3d 485, 507–08 (Mo. banc 2000).

Additionally, Movant failed to demonstrate how he was prejudiced. The only statement in Movant's motion that could be construed to be an allegation of prejudice is that he "was subjected to a verdict by a jury which had not considered all of the argument in the case." Assuming, *arguendo*, a juror fell asleep during closing argument and missed a portion of counsel's argument, Movant still would have had a jury that was attentive during the presentation of the evidence. "Closing argument by the attorneys is not evidence to be considered by the jury." *State v. Kenley*, 952 S.W.2d at 270. The motion court did not clearly err.

### 10. Batson [6] challenge

Movant claims the motion court clearly erred in denying his claim without an evidentiary hearing that his trial counsel were ineffective for failing to object properly to alleged *Batson* violations during voir dire. Movant alleges his trial counsel failed to make a complete and proper *Batson* objection to the strikes of venirepersons John Clark and Debra Cottman, and failed to make any *Batson* objection to the strikes of venirepersons Cleeta Jackson and Harry Stephenson. Accordingly, Movant argues he was prejudiced because trial counsel's performance violated his rights to a fair trial.

The use of peremptory strikes of venirepersons on the basis of race is unconstitutional. *Batson*, 476 U.S. at 84, 106 S.Ct. 1712. A successful *Batson* challenge requires compliance with the following procedure:

> First, a defendant must challenge one or more specific venirepersons struck by the State and identify the cognizable racial group to which they belong. Second, the State must provide a race-neutral reason that is more than an unsubstantiated denial of discriminatory purpose. Third, the defense must show that the State's explanation was pretex-

---

6. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

tual and the true reason for the strike was racial.

*State v. McFadden,* 191 S.W.3d 648, 651 (Mo. banc 2006) (footnotes omitted). ·

■■■■ To obtain an evidentiary hearing on a post-conviction motion, a movant needs to "allege facts showing that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and that movant was thereby prejudiced." *Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003), *see also Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

### a. Clark

■■■■ The motion court found that trial counsel made a *Batson* objection regarding this venireperson and the State's reasons for the strike were race neutral as the venireperson stated he would not sign a death verdict, was not strong on the death penalty, potentially would hold the State to a higher burden, and exhibited inappropriate behavior during voir dire. Movant's trial counsel made a *Batson* objection after the State used a strike on this venireperson. The State presented its argument that, *inter alia,* this venireperson stated he would not sign a death verdict. Movant's counsel had no response.

In his post-conviction motion, Movant alleges that his counsel were ineffective for failing to show the State's strike was pretextual or race motivated. However, Movant fails to make any allegation as to what response counsel should or could have made.

### b. Cottman

■■■■ Movant's trial counsel made a *Batson* objection after the State used a strike on this venireperson. On direct appeal, Movant's counsel argued the State's reason for this strike was pretextual because another member of the venirepanel was a foster parent but was not struck. This Court found the State's reason for not striking this venireperson was not pretextual in that this venireperson was the only one who provided services to Annie Malone, the same organization that assisted Movant. *Johnson,* 284 S.W.3d at 571.

In his post-conviction motion, Movant alleges his trial counsel should have stated that the State's reasons for striking this venireperson were pretextual because, had the State been interested in discovering if the venirepanel had been involved with agencies that assisted Movant, the State would have questioned the venirepanel in more detail. However, Movant does not attempt to demonstrate how this has prejudiced him or how the result of his trial would have been different.

### c. Jackson and Stephenson

The motion court found that venireperson Jackson stated that her son had been prosecuted by the Saint Louis County Prosecutor for murder and was acquitted after spending approximately one year in custody. The motion court found that venireperson Stephenson had chaired a prison ministry at his church, which involved writing letters to prisoners. Movant's trial counsel did not make a *Batson* objection after the State used a strike on Jackson and Stephenson.

The only advocacy presented to this Court regarding Jackson and Stephenson was the assertion that the motion court's findings are clearly erroneous and this Court "must disregard the motion court's 'gratuitous observations' regarding race-

neutral reasons that the prosecutor did not even give as to jurors Jackson and Stephenson."

It is axiomatic that the State did not present race-neutral reasons at trial because there was no *Batson* objection as to these venirepersons. There was no need for the State to clarify its position regarding these two venirepersons. However, the record is clear; there were race-neutral reasons regarding the reasons the State wished to strike these venirepersons. Further, the trial court specifically questioned trial counsel as to whether a *Batson* challenge would be made regarding venireperson Stephenson so as to prevent this issue from being raised in a post-conviction motion.

Movant failed to present any argument as to why his counsel could have been ineffective for failing to raise a *Batson* objection to these venirepersons. Movant also fails to present any argument as to how he was prejudiced by the alleged inaction of his trial counsel.

■ In this point on appeal, Movant is unable to demonstrate prejudice by making the statement that if selected for a jury, a venireperson merely on the basis of his or her race, would not vote for the death penalty. This allegation is "to engage, at best, in mere speculation and, at worst, in the stereotyping that *Batson* and its progeny strive to prevent." *Morrow*, 21 S.W.3d at 827 (quoting *State v. Loazia*, 829 S.W.2d 558, 570 (Mo.App. E.D.1992)). Any allegation that Movant should be granted an evidentiary hearing to develop his arguments also fails. "The purpose of an evidentiary hearing is to determine whether the facts alleged in the motion are accurate, not to provide [Movant] with an opportunity to produce new facts." *Morrow*, 21 S.W.3d at 827. The motion court did not clearly err.

### 11. Failure to present mitigation evidence

■ Movant alleges the motion court clearly erred in denying his claim regarding the failure of his counsel to call Lavonda Bailey (hereinafter, "Bailey") as a witness in the penalty phase of his trial. Movant claims Bailey would have testified he was a good and loving father. Movant believes Bailey's testimony would have countered the evidence presented that Movant assaulted his daughter's mother, Bailey's daughter, and that Movant then would have received a life sentence.

■ Regarding a claim of ineffective assistance of counsel for failing to investigate and call witnesses, Movant must plead and prove that: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Glass v. State*, 227 S.W.3d 463, 468 (Mo. banc 2007) (quoting *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004)). A trial counsel's decision not to call a witness to testify is presumptively a matter of trial strategy and will not support Movant's claim of ineffective assistance of counsel unless Movant clearly establishes otherwise. *Whited v. State*, 196 S.W.3d 79, 82 (Mo. App. E.D.2006).

At the evidentiary hearing, Bailey testified that she was not contacted by counsel to testify at trial, but that she would have been willing and able to do so. Bailey would have testified Movant had a good relationship with his daughter, he cared for his daughter for multiple days at a time in Bailey's home, he saw his daughter every day, and she considered him a good father. Bailey further stated that after Movant was arrested and he could no long-

er physically visit his daughter, he called his daughter every week and his daughter sometimes visited him in prison. Bailey was aware of the incident wherein Movant pleaded guilty to assaulting Bailey's daughter, the mother of Movant's daughter.

Movant's counsel also testified at the evidentiary hearing. Each stated they did not contact Bailey because Movant had led them to believe they were not on good terms and Bailey's testimony would not be helpful. Further, Movant's counsel did present additional evidence from multiple family members and educators that Movant had a loving relationship with his daughter at trial.

The motion court found that Bailey's testimony would have been cumulative and would not have provided Movant with a viable defense. Further, the motion court determined that it was reasonable for counsel not to investigate fully calling Bailey as a witness because Movant gave them the impression that Bailey did not have a positive opinion of him and that Movant had assaulted Bailey's daughter.

Bailey's testimony would have been cumulative of testimony, which already had been presented. *See Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001) (counsel not ineffective for failing to call a witness whose testimony would be cumulative to that of other witnesses). Movant has not demonstrated that Bailey's additional testimony would have presented him a viable defense. *Glass*, 227 S.W.3d at 468. The motion court's findings were not clearly erroneous.

### Conclusion

Movant failed to prove the motion court clearly erred in denying him postconviction relief. The judgment is affirmed.

RUSSELL, C.J., FISCHER, WILSON and TEITELMAN, JJ., concur.

BRECKENRIDGE, J., concurs in part and dissents in part in separate opinion filed.

STITH, J., concurs in opinion of BRECKENRIDGE, J.

PATRICIA BRECKENRIDGE, Judge.

I concur in the portion of the principal opinion that affirms the denial of 13 of Kevin Johnson's post-conviction claims. I do not concur, however, in the principal opinion's holding that Mr. Johnson failed to plead sufficient facts to require an evidentiary hearing on his claim that his trial counsel were ineffective for not objecting to the presence of numerous uniformed police officers in the courtroom and halls during his trial. Other jurisdictions have also held that, in fact-specific circumstances, the attendance of numerous uniformed police officers during criminal proceedings may be inherently prejudicial to the defendant. Therefore, I respectfully dissent.

The motion court must hear evidence of a post-conviction claim when: (1) the movant alleges facts, not conclusions, warranting relief; (2) "the facts alleged ... raise matters not refuted by the files and records in the case; and (3) the matters of which movant complains ... have resulted in prejudice." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). To sufficiently allege a claim of ineffective assistance of counsel, a post-conviction movant must allege facts that would show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation and that he was prejudiced by that failure. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In his Rule 29.15 motion, Mr. Johnson alleged that his trial counsel were ineffective because they failed to object to the presence of "numerous uniformed police officers" in the hallways and the courtroom during voir dire and the guilt and penalty phases of his trial. He alleges that this was "an obvious display of support for the victim in the case" and "a cry for justice for the victim and a call for harsh punishment for [Mr. Johnson]." He further alleges in his motion that he was denied his right to a fair trial and a fair and impartial jury because the presence of the uniformed officers "necessarily impacted the jury's consideration of the case and its consideration of punishment." He asserts that his trial counsel should have moved to exclude the uniformed police officers from observing the trial or, alternatively, from wearing their uniforms when they observed the trial.

The motion court denied Mr. Johnson an evidentiary hearing on this claim, finding that there had not been any prejudice because the jury had been sequestered and had no contact with any of the officers who attended the trial. The principal opinion agrees. In so holding, both appear to have misunderstood the nature of Mr. Johnson's claim. As Mr. Johnson explains in his brief, he did not claim that he did not receive an impartial trial because of the possibility of contact between the jury and the attending officers. Instead, he claims that the presence of numerous uniformed officers, in an obvious show of support for their fallen comrade and his family, allowed the officers to convey the message to the jury to remember the police officer victim and to convict and harshly punish Mr. Johnson, and that this message was not subject to cross-examination.

"Due Process requires that the accused receive a trial by an impartial jury free from outside influences." *Sheppard v.* *Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). When a criminal defendant has the right to a trial by jury, the Sixth and Fourteenth amendments entitle that defendant to a panel of impartial, indifferent jurors whose verdict must be based on evidence developed at the trial. *Morgan v. Illinois,* 504 U.S. 719, 726–27, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Furthermore, an essential component of a fair and impartial trial is a jury that proceeds under the presumption that the accused is innocent of the charges. *Delo v. Lashley,* 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993); *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

To safeguard the presumption of innocence, "courts must be alert to factors that may undermine the fairness of the fact-finding process" and "carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Williams,* 425 U.S. at 503, 96 S.Ct. 1691. *See also Estes v. Texas,* 381 U.S. 532, 560, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Warren, C.J., concurring) (stating that one of the roles of the trial court is to guard against "the intrusion of factors into the trial process that tend to subvert" the impartiality of the proceedings). Indeed, the Supreme Court has stated that:

The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

*Williams,* 425 U.S. at 504, 96 S.Ct. 1691 (internal citations omitted). Because of the risk that outside factors may affect the outcome of a trial proceeding, the Supreme Court has determined that a proceeding may be inherently prejudicial when " 'an unacceptable risk is presented of impermissible factors coming into play.' " *Holbrook v. Flynn,* 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (citing *Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)).

Although neither case found in favor of the accused, the Supreme Court's opinions in *Williams* and *Flynn* provide the standards applicable to Mr. Johnson's case.[1] In *Williams,* the Supreme Court found that the Fourteenth Amendment precludes a state from forcing an accused to stand trial in identifiable jail attire because that "clothing is so likely to be a continuing influence throughout the trial that ... an unacceptable risk is presented of impermissible factors coming into play." 425 U.S. at 505, 96 S.Ct. 1691. In *Flynn,* the defendant claimed he was prejudiced by the presence of four uniformed state troopers on the front row of the spectators' section, behind the defendant. 475 U.S. at 562, 106 S.Ct. 1340. These troopers were at the hearing to provide courtroom security for the six defendants on trial while the usual security officers were unavailable. *Id.* at 563, 106 S.Ct. 1340. Under those circumstances, the Court found:

> Whenever a courtroom arrangement is challenged as inherently prejudicial,

therefore, the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether "an unacceptable risk is presented of impermissible factors coming into play."

\* \* \*

*We do not minimize the threat that a roomful of uniformed and armed policemen might pose to a defendant's chance of receiving a fair trial.* But we simply cannot find an unacceptable risk of prejudice in the spectacle of four such officers quietly sitting in the first row of a courtroom's spectator section.... Four troopers are unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings. Indeed, any juror who for some other reason believed defendants particularly dangerous might well have wondered why there were only four armed troopers for the six defendants.

475 U.S. at 570–71, 106 S.Ct. 1340 (internal citations omitted) (emphasis added).

The United States Supreme Court recently heard a case raising a similar issue of spectator interference. In *Carey v. Musladin,* the defendant asserted in his petition for habeas relief that he was deprived of a fair trial because several members of the victim's family sat in the front row of the spectator's gallery during the trial wearing buttons with a photograph of

---

1. Both *Williams* and *Flynn* were cited for the Supreme Court's decision in *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), reversing this Court's opinion in *State v. Deck,* 136 S.W.3d 481 (Mo. banc 2004). In *Deck,* the defendant was compelled to attend the sentencing phase of his trial while wearing shackles. *Deck II,* 544 U.S. at 625, 125 S.Ct. 2007. While the Supreme Court recognized that sentencing phase did not also require the same presumption of innocence as the guilt phase, it found that visible shackles during the penalty phase of a capital proceeding may create an impermissible influence on the sentencing jury. *Id.* at 632–33, 125 S.Ct. 2007. Importantly, the Supreme Court noted that certain courtroom practices are inherently prejudicial because the possible negative effects of those practices cannot be reflected in a trial transcript. *Id.* at 635, 125 S.Ct. 2007.

the victim. 549 U.S. 70, 72–73, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). In its analysis, the Supreme Court recognized "that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial." *Id.* at 72, 127 S.Ct. 649. The Court distinguished *Flynn* and *Williams,* addressing state-sponsored courtroom practices, from the facts of *Musladin,* in which the conduct of the victim's family was challenged by the defendant. The Court noted that it had not yet decided a case in which spectators' conduct was claimed to have denied a defendant the right to a fair trial. *Id.* at 76, 127 S.Ct. 649. Because the Supreme Court never previously had made a decision about spectator interference, it unanimously denied the defendant's habeas petition on the narrow ground that the law was not clearly settled, as required by the Anti-terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1219. *Id.* at 76–77, 127 S.Ct. 649.[2]

Despite the lack of a Supreme Court decision specifically addressing private-actor courtroom conduct, Justice Souter notes in his concurring opinion that the application of the clearly established standards of *Williams* and *Flynn* require courts to examine "whether a practice or condition presents 'an unacceptable risk ... of impermissible factors coming into play' in the jury's consideration of the case." *Id.* at 82, 127 S.Ct. 649 (Souter, J., concurring). Justice Souter states that he refrained from ruling against the majority only because he did not feel that the buttons, under the facts presented to the Court, rose to an "unacceptable level." *Id.* at 79, 127 S.Ct. 649 (Stevens, J., concurring), 83 (Souter, J., concurring).

Mr. Johnson's case presents an interesting hybrid of the state-sponsored courtroom practice cases and those cases making spectator-conduct claims identified in *Musladin.* While the State may not have directed the numerous uniformed officers to attend Mr. Johnson's proceedings, as spectators, they nevertheless were wearing their uniforms as law enforcement officers, an unmistakable symbol of state authority. *Daniels v. City of Arlington,* 246 F.3d 500, 504 (5th Cir.2001); *State v. Jones,* 483 So.2d 433, 439 (Fla.1986); *Duncan v. State,* 163 Ga.App. 148, 294 S.E.2d 365, 366 (1982). Missouri courts have yet to decide such a claim. For this reason, guidance can be found in two Florida cases that addressed how a large contingent of uniformed law enforcement officer-spectators present during a criminal hearing, and not attending to fulfill some public assignment, may create such "an unacceptable risk ... of impermissible factors coming into play." *Ward v. State,* 105 So.3d 3 (Fla.Dist.Ct. App.2012); *Shootes v. State,* 20 So.3d 434 (Fla.Dist.Ct.App.2009). In *Ward,* the defendant alleged, in his motion for postconviction relief on the basis of ineffective assistance of counsel, that "there were enough officers in the audience to make 'the courtroom look like a policeman's benefit.'" 105 So.3d at 5. The defendant pleaded that the officers' open show of support for their fallen comrade "'influenced the jury to convict [the] defendant out of fear and sympathy, rather than because the State had proven its case beyond a reasonable doubt.'" *Id.* The Florida appeals court found these claims were facially sufficient to show that the defendant's counsel was ineffective for failing to object to the pres-

---

**2.** In reaching its narrow holding, the Supreme Court recognized that "lower courts have diverged widely in their treatment of defendants' spectator-conduct claims." *Id.* at 76, 127 S.Ct. 649. While the lower courts recognize that spectator conduct may pose an unacceptable risk to the fairness of a criminal proceeding, their conclusions vary depending on the degree of the risk influence created by the circumstances of the cases. *Id.*

ence of the uniformed officers and ordered a remand to obtain evidence to refute those claims. *Id.*

In *Shootes,* a large number of officers, estimated between 35 and 70, attended the trial. 20 So.3d at 436. While acknowledging that the presence "of courtroom observers wearing uniforms, insignia, buttons, or other indicia of support for the accused, the prosecution, or the victim of the crime does not automatically constitute denial of the accused's right to a fair trial," the Florida appeals court found that "there are situations where the atmosphere in the courtroom might infringe on the defendant's right to a fair trial." *Id.* at 439. Furthermore, the court noted that, when such an issue is raised, courts must exam-

ine the issue on a case-by-case basis to consider the "totality of the circumstances." *Id.* (citing *Sheppard v. Maxwell,* 384 U.S. 333, 352, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). Under the circumstances, where the officers were not present as added security or for the purpose of providing testimony[3], a jury would become "susceptible to the impression that the officers are there 'to communicate a message to the jury.' " *Id.* (citing *Woods v. Dugger,* 923 F.2d 1454, 1459 (11th Cir.1991)). This, along with additional outside influences in the case, "created an unacceptable risk that the jury's determination of the credibility of witnesses and findings of fact would be tainted by impermissible factors not introduced as evidence or subject to cross-examination."[4] *Id.* at 440.

---

3. The Florida appeals court considered additional factors—the number of spectators identifiable as law enforcement personnel, whether they were grouped together in the audience or interspersed among other attendees, and the officers' proximity to the jury. *Shootes,* 20 So.3d at 439.

4. These Florida courts are not the only ones to have examined interference in the form of uniformed officers attending proceedings as spectators, either using the *Williams* and *Flynn* reasoning, or based on different reasoning.

In some of those cases, courts have found that the attendance of numerous officers during proceedings was inherently prejudicial to the defendant. *See, e.g., Balfour v. State,* 598 So.2d 731, 756 (Miss.1992) ("[W]e note that it capital murder cases where the victim was a member of law enforcement, the *potential exists* for a coercive atmosphere when uniformed law officers sit together in a group. Consequently, we discourage this practice."); *United States v. Johnson,* 713 F.Supp.2d 595, 617 (E.D.La.2010) (finding that trial court erred by allowing 40 uniformed officers to attend the hearings, and that it "should have granted the defense['s] motion [by] insist[ing] that any appearances by law enforcement in the audience be in plain clothes").

Other cases, while recognizing that the presence of officers may cause prejudice to a defendant, did not find prejudice where a

lower court took remedial actions. *See, e.g., Bell v. Com.,* 264 Va. 172, 563 S.E.2d 695, 713 (2002) (upholding the trial court's decision to partially deny motion to exclude officers from wearing uniforms while attending as spectators while it recognized that "if too many officers attended the trial as spectators while in uniform, it could create 'an oppressive atmosphere.' "); *Phillips v. State,* 70 P.3d 1128, 1137 (Alaska Ct.App.2003) (acknowledging that the "appearance of law enforcement officers *en masse* in the spectator gallery posed a threat that the jurors would feel implicit pressure to return a verdict favorable to law enforcement interests or sentiment," and that the presiding judge did not err in refusing to grant a mistrial because he had limited the amount of officers who could be present) *People v. Cummings,* 4 Cal.4th 1233, 18 Cal. Rptr.2d 796, 838, 850 P.2d 1 (1993) (en banc) (recognizing the balancing right of officers to attend public proceedings, it found no abuse of discretion in the trial court's decision to suggest that police officers attend the hearing in civilian clothes when possible and to rule that if more than two or three uniformed officers were present at the same time, the court would entertain a renewed motion to exclude them).

Still others, while not finding prejudice, specifically recognize the possibility or threat of prejudice. *See, e.g., People v. Grady,* 40 A.D.3d 1368, 1374, 838 N.Y.S.2d 207 (2007) (while finding that there was not a problem of

Here, Mr. Johnson's motion alleged that there were numerous uniformed officers, in the courtroom and in the hallways during voir dire and both phases of the trial, attending the proceedings as a show of support for a fallen officer and to sway the jury to convict Mr. Johnson. As noted by Mr. Johnson, the jury's decision to give him a death sentence, under these circumstances, was vastly different from the result of his previous trial, in which the jury allegedly hung at 10–2 in favor of a noncapital second degree murder conviction. The presence of the uniformed officers reasonably may have created an outside influence on the jury, affecting the presumption of innocence necessary for a fair trial and impacting the harshness of the sentence imposed.

Because the state does not argue that these allegations are refuted by the record, and because, if the facts as alleged are true, it appears there is a reasonable probability that the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death, Mr. Johnson should have been afforded an evidentiary hearing on this issue. Accordingly, without making any determination as to whether Mr. Johnson did receive a fair trial, I would find that Mr. Johnson has alleged facts, unrefuted by the record, that show he was prejudiced by his trial counsel's failure to object to the presence of "numerous uniformed officers" during his trial. I would remand to the motion court to conduct an evidentiary hearing on the issue. As to the principal opinion's disposition of all other claims, I concur.

inappropriate influence, noting that "the show of support for [another officer] by uniformed members of law enforcement, who were seated in the back two rows of the courtroom and who stood in unison when he entered the courtroom to testify, was not appropriate because such conduct may have a secondary effect of influencing the jury").

Lastly, yet other cases ruled that their presence in their specific circumstances were not prejudicial or that sufficient facts were not alleged that would allow a finding of prejudice. *See, e.g., Kearse v. State,* 969 So.2d 976, 989 (Fla.2007) ("[T]he mere presence of [police] officers was insufficient to demonstrate a hostile courtroom...."); *Commonwealth v. Philistin,* —— Pa. ——, 53 A.3d 1, 32–33 (2012) (finding that failing to object to officers' presence during guilt phase of hearing was not ineffective assistance of counsel because appellant could not demonstrate that verdict would have differed after undisputed evidence was presented, and that pleading regarding sentencing phase were inadequate); *Commonwealth v. Gibson,* 597 Pa. 402, 448, 951 A.2d 1110 (2008) (finding that the allegations, which did not detail the number of officers at the proceeding or allege that they caused any disruption, were insufficient to show that the defendant was prejudiced by their presence at the hearing); *Brown v. State,* 132 Md.App. 250, 752 A.2d 620, 629–631 (2000) ("Appellant has failed to demonstrate that the presence of an unknown number of uniformed police officers at trial created an unacceptable risk of impermissible factors coming into play and was so inherently prejudicial that appellant was denied a fair trial."); *Pratt v. State,* 228 Ga.App. 567, 492 S.E.2d 310 (1997) (finding that the presence of twenty-five uniformed correctional officers after close of evidence by prior to jury instructions did not create inherent prejudice depriving defendant of a fair trial); *Howard v. State,* 941 S.W.2d 102, 118–19 (Tex.Crim.App.1996) (en banc) (absent a showing of overt conduct or expression, the presence of 20 uniformed peace officers among 80 spectators did not deprive defendant of a fair trial); *Hansen v. State,* 592 So.2d 114, 143–44 (Miss.1991) (holding that the trial court did not abuse its discretion by finding that, among the 40 spectators present, the six uniformed officers that commingled with the rest of the spectators did not prejudice the defendant and require a mistrial).