

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| JEFFREY A. CHANDLER, | ) | No. ED103583 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Lincoln County |
| vs. | ) | 14L6-CC00097 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable James D. Beck |
| | ) | |
| Respondent. | ) | Filed:   October 18, 2016 |

## OPINION

Jeffrey A. Chandler was convicted, after a bench trial, of the felony charges of two counts of second-degree statutory sodomy, one count of second-degree statutory rape, and one count of incest. The trial court sentenced Chandler to three consecutive seven-year prison terms for the two counts of second-degree statutory sodomy and the count of second-degree statutory rape, and to a concurrent four-year prison term for the count of incest. Chandler appealed the judgment of conviction in *State v. Chandler*, 429 S.W.3d 503 (Mo.App.E.D. 2014), and this Court affirmed. Chandler then filed a Rule 29.15 motion for post-conviction relief. The motion court denied it after an evidentiary hearing. We now consider Chandler's appeal of the motion court's ruling.

Arguing that the motion court clearly erred in denying his Rule 29.15 motion, Chandler raises one point on appeal: that trial counsel rendered ineffective assistance by failing to object under *Missouri v. Seibert*, 542 U.S. 600 (2004) to a police detective's trial testimony that he did not believe Chandler's denials of committing the charged offenses because his "micro-gestures"

during interrogation indicated that he was not telling the truth. Because the motion court did not clearly err in determining that *Seibert* does not support Chandler's ineffective assistance claim, and thus that he is not entitled to any relief, we affirm.

## Standard of Review

We review the denial of a Rule 29.15 motion for post-conviction relief only to determine whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k)[1]; *Mallow v. State*, 439 S.W.3d 764, 768 (Mo.banc 2014). Findings and conclusions are clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.* We presume that the motion court's findings are correct. *Id.*

## Discussion

### The *Strickland* Test

We apply the two-part *Strickland* test to ineffective-assistance-of-counsel claims for post-conviction relief under Rule 29.15. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Johnson*, 406 S.W.3d at 898. To be entitled to relief, the movant must show by a preponderance of the evidence that (1) his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he was prejudiced by that failure. *Johnson*, 406 S.W.3d at 898-99. To overcome the strong presumption that counsel's conduct was reasonable and effective, the movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professionally competent assistance. *Id.* To show prejudice, the movant must demonstrate that there is a

---

[1] All rules references are to the Missouri Supreme Court Rules (2016).

2

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

### Failure to Object under *Seibert* to Detective's Testimony about Chandler's "Micro-gestures"

In his sole point on appeal, Chandler claims that the motion court clearly erred in denying his Rule 29.15 motion because trial counsel rendered ineffective assistance by failing to object under *Missouri v. Seibert*, 542 U.S. 600 (2004) to a police detective's trial testimony that he did not believe Chandler's denials of committing the charged offenses because his "micro-gestures" during interrogation indicated that he was not telling the truth. We disagree because the motion court did not clearly err in determining that *Seibert* does not support Chandler's ineffective assistance claim, and thus that he is not entitled to any relief.

In *Seibert*, the Supreme Court of the United States held that a defendant's statement is not properly admitted, absent specific curative measures, where it has resulted from a particular two-step interrogation technique—in which police twice question the defendant, first without and then with the *Miranda* warnings[2], each time eliciting the same statement—and the technique has been used in a calculated way to undermine the *Miranda* warnings. *See Seibert*, 524 U.S. at 621 (Kennedy, J., concurring) (controlling opinion) ("When an interrogator uses [the above-described] deliberate, two-step strategy, predicated upon violating *Miranda* during an extended interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps."). For several reasons, *Seibert*'s holding does not support Chandler's claim here.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, . . . [p]rior to any [custodial interrogation], the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

Most important, in this case Chandler admits that there is no evidence that the police detective who interrogated him used the two-step interrogation technique condemned in *Seibert*. Chandler simply argues that the interrogation techniques the detective did use had the same *effect* on his understanding of his *Miranda* rights. But not even that much is true. Unlike the two-step interrogation in *Seibert*, the detective's questioning in this case did not deprive Chandler of a free and rational choice whether to exercise his *Miranda* rights, *see Seibert*, 542 U.S. at 611 (plurality opinion) ("*Miranda* addressed 'interrogation practices . . . likely . . . to disable [an individual] from making a free and rational *choice*' about speaking, and held that a suspect must be 'adequately and effectively' advised of the choice the Constitution guarantees." (quoting *Miranda*, 384 U.S. at 464-65, 467) (emphasis added)), and thus no unconstitutional coercion resulted here.

In this case, Chandler was arrested for committing sexually deviant acts against his 16-year-old daughter, and he was questioned by a police detective both before and after receiving the *Miranda* warnings. However, prior to giving the warnings the detective did not ask any questions regarding the allegations of Chandler's criminal offenses. Instead, for approximately 20 minutes the detective discussed only Chandler's background, his employment, and his family dynamics. When the detective finally gave Chandler the *Miranda* warnings, Chandler signed an "advice of rights" form stating that he understood all of his *Miranda* rights and had elected to waive them. Only then did the detective begin to question Chandler regarding the allegations against him.

At trial, the prosecutor asked the detective to describe his interview with Chandler:

PROSECUTOR: How did your interview with the defendant begin?
DETECTIVE: Basically Mr. Chandler's demeanor was very calm and just nonchalant. In regards to that, basically denied allegations once we got into what the allegations were. Every time I would bring a specific allegation up, he would deny it. And then as I would follow up with it, he—Mr. Chandler would make micro-gestures.

4

Defense counsel objected to the detective's testimony on the grounds that there was "no foundation laid that [the detective] [was] an expert in any kind of micro-gestures or hidden body language or anything of that nature." The prosecutor responded that the detective was testifying merely "as to what he personally observed," and the trial court overruled defense counsel's objection. The prosecutor then continued with the detective:

> PROSECUTOR: Sir, as part of your training, and particularly in the training that you just referenced, do you learn about verbal and nonverbal cues?
> DETECTIVE: Yes, sir.
> PROSECUTOR: Can you explain the difference between the two?
> DETECTIVE: Verbal and nonverbal, basically when you ask a question, basically if someone that is deceptive would pause, repeat the question. Basically what that tells us in our mind is that they're trying to come up with an answer or trying to come up with a different answer than what their brain already knows is the truth.
> Nonverbal is basically movements of their body, how they position themselves, how they adjust themselves, and that's all part of the rapport building. What we're establishing when we're doing the nonchalant and nonstress questions is we're establishing what their baseline is, basically what their body mechanics are, how they're sitting, this, that, and the other. And then what we're trained to do is notice it when we ask a stress question, how their body changes when we ask that hot question, basically what they do, basically it's their tell.
> PROSECUTOR: Okay. And how did Mr. Chandler react to a stress question—generally?
> DETECTIVE: Generally he would nod his head up and down.
> PROSECUTOR: Can you indicate how—what you mean by that?
> DETECTIVE: Basically he would say no, but he would nod his head up and down, which is a micro-gesture telling us that, yes.

In light of this testimony, Chandler argues that the detective's questioning deprived him of a free and rational choice whether to waive his *Miranda* rights because the detective unconstitutionally coerced him by "reusing what was learned during the pre-warning stage to get [Chandler] to incriminate himself after the *Miranda* warnings." This argument is merely a backhanded attempt to bring Chandler's case within *Seibert*'s restrictions, and it fails. In substance, Chandler contends that the detective's questioning unduly pressured him to perform or not perform physical movements—i.e., express body language—while speaking that, both before

5

and after the *Miranda* warnings, corresponded to whether he was telling the truth. This theory takes more than a moment to comprehend but does not hold up to the slightest examination.

Basically, Chandler claims that the detective's questioning coerced him into nodding his head when he denied committing the criminal offenses perpetrated against his daughter. However, we fail to see how the detective's questioning placed any such pressure on Chandler. Chandler had no reason to suspect that during the pre-warning questioning, the detective was drawing any particular conclusions about Chandler's body language while speaking, such as that Chandler keeping his head still while answering a question meant that he was telling the truth; accordingly, after the *Miranda* warnings, Chandler had no reason to feel pressured by the detective to express any particular body language, whether by nodding or keeping his head still, when denying that he committed the criminal offenses perpetrated against his daughter. Thus, we lack any indication that the detective's questioning was coercive, or that the *Miranda* warnings the detective gave to Chandler were unlikely to be effective in alerting him to his right not to incriminate himself with respect to his offenses in this case.

Moreover, in *State v. Hughes*, 272 S.W.3d 246, 253-54, 256 (Mo.App.W.D. 2008), this Court's Western District established that where the defendant does not make any allegedly incriminating statements prior to receiving the *Miranda* warnings, *Seibert*'s holding regarding the two-part interrogation technique addressed in that decision is "inapplicable" and does not call for the suppression of evidence obtained after giving the warnings. Like the *Hughes* court, while "[w]e are not blind to the fact that an evident purpose of the officers' pre-waiver questioning of [the defendant] (beyond acquiring background information, and gauging his intellectual capacity, literacy, and lucidity) was to build a rapport to facilitate [his] further interrogation," we note that here, as in *Hughes*, "nothing in [the] pre-waiver discussion undermined, misrepresented, or

6

otherwise rendered ineffective the *Miranda* warning [the defendant] was ultimately given, or the waiver he ultimately executed (nor did the officers intend to achieve this effect, according to the [motion] court's findings)." *Hughes*, 272 S.W.3d at 255.

And last, as just noted, the police detective who interrogated Chandler did not use interrogation techniques calculated to circumvent Chandler's protections under *Miranda*. The detective's initial interrogation of Chandler was not conducted to obtain statements to be used against Chandler, and the detective did not address anything but background information and other topics not relating to the charged offenses until after giving Chandler the *Miranda* warnings. Accordingly, we cannot say that *Seibert* required the suppression of the detective's testimony about any of Chandler's body language or "micro-gestures." Point denied.

### Conclusion

For the reasons stated above, we affirm the judgment of the motion court.

_____
James M. Dowd, Presiding Judge

Kurt S. Odenwald, J., and
Gary M. Gaertner, Jr., J., concur.

7