Karen King Mitchell, Chief Judge
Lance Butler appeals, following an evidentiary hearing, the denial of his amended Rule 29.15[1] motion for post-conviction relief, in which he argued that his trial counsel was ineffective for failing to (1) object to impermissible prior bad acts and *430 propensity evidence and (2) depose the State's witnesses. Although not raised in his amended motion, Butler now claims the judgment issued by the trial court contains a clerical error, and he asks this court to remand the case with instructions to issue a nunc pro tunc order. Finding no error, we affirm the motion court's denial of Butler's motion for post-conviction relief. Because Butler's request for remand is not properly before this court, his request is denied.
Background[2]
On May 17, 2012, Zachary Lisle, a confidential informant, contacted the Clay County Drug Task Force because he had arranged to buy one pound of marijuana for $950 from someone named "L.C." Deputy Sharon Taylor was working as a sergeant for the Task Force at the time. She met Lisle and had him outfitted with a recording device. Lisle and Deputy Taylor then went to a Walgreens parking lot at the intersection of Antioch Road and Vivion Road where Lisle arranged to complete the transaction with L.C. A "cover team" of police officers was situated nearby.
Pursuant to Deputy Taylor's instruction, Lisle called L.C. to tell him that they were at the parking lot and ready to buy the marijuana. Lisle and L.C. exchanged additional phone calls and text messages before a man carrying a duffle bag approached Deputy Taylor and Lisle's vehicle. Deputy Taylor asked whether that man was L.C., and Lisle responded, "Yeah. That's our man." At trial, Deputy Taylor identified Butler as the man who approached the car.
Butler came around to the passenger's side of the vehicle where Lisle was sitting, and Deputy Taylor rolled down the window. Butler leaned in the window and fumbled with his bag. Deputy Taylor saw Butler's hand move upward, and she spotted a gun, which Butler pointed in her face while demanding she give him the money and car keys. Deputy Taylor complied. At that point, Butler pointed the gun at Lisle and demanded Lisle's phone. Once Butler had the money, keys, and phone, he ran.
While running, Butler threw the keys into the grass. A member of the cover team chased Butler on foot across the parking lot toward the street. A white Ford Explorer arrived, and Butler jumped into the passenger side of the vehicle, which then drove away.
Josh Davis, an off-duty detective specializing in drug enforcement, was picking up a prescription at the Walgreens and saw Butler running toward the street. Detective Davis got in his car, called 911, told the dispatcher what he saw, and followed the Ford Explorer into Jackson County and onto Paseo Boulevard. Kansas City police officers stopped the Ford Explorer at the intersection of Truman Road and Paseo Boulevard. Butler jumped out of the vehicle and ran. The officers who pulled the vehicle over chased Butler and apprehended him. Once Butler was in custody, the officers retraced Butler's footsteps and found some of the money that Deputy Taylor had surrendered to Butler. The rest of the money was found in both the Ford Explorer and Butler's pockets. Lisle's cell phone, however, was not recovered.
The next day, Special Agent Harry Lett of the Bureau of Alcohol, Tobacco, Firearms, and Explosives searched the intersection of Truman Road and Paseo Boulevard *431 for the firearm Butler had pointed at Deputy Taylor. Though the area had not been secured overnight, Agent Lett found a firearm similar to the one described by Deputy Taylor in an alleyway underneath some weeds. A magazine and live ammunition were also recovered, but no useful fingerprints were found on these items.
The State charged Butler as a persistent offender with two counts of robbery in the first degree in violation of § 569.020,[3] two counts of armed criminal action in violation of § 571.015, and one count of unlawful possession of a firearm in violation of § 571.070. One robbery charge and related armed criminal action charge involved Butler's actions toward Deputy Taylor; the second robbery charge and related armed criminal action charge involved Butler's actions toward Lisle. Before trial, the State dismissed the unlawful possession of a firearm charge.
Also before trial, an investigator from the Public Defender's office interviewed Lisle. Shortly after that interview, trial counsel informed Butler of counsel's plans to depose Lisle and Deputy Taylor so he would have their sworn statements to use for impeachment at trial. The Public Defender's office, however, declined to provide funding for the depositions, so they did not occur as planned.[4]
At trial, the State asked Deputy Taylor how the Clay County Drug Task Force works with confidential informants. She testified:
It depends on what kind of charges they have. Sometimes if they have the, the charges and they're all narcotics related, if there is not a huge amount, or is a big charge, then they're, we approach them and say, hey, we can work with you to make a discharge, work your charges with us in exchange for you to introduce to the big drug dealers out there. So, we can start working them doing undercover, undercover buys and, you know, working charges on them.
In response to a question about her ability to function effectively as a task force member without confidential informants, Deputy Taylor testified that she needed informants because:
[I]n that environment, it's not easy for me to come to a drug dealer and say, hey, I want to buy drugs from you, because they don't [know] me, they don't trust me. So, the way to work our way in is by working with somebody they trust. And if you're new in that, in that world, per se, you are not a trusted person, so they will not sell [to] you, they will not talk to you, they just, they don't even want to see you around them.
Finally, in response to a question about the proximity of backup officers during an undercover drug buy, Deputy Taylor said, "it varies, depending on, on the location, because some of the drug dealers have counter surveillance, we have to be careful."
At trial, Lisle testified that he did not have a good memory of the robbery because it was brief and shocking and he was high at the time. Initially, he said he could not remember a gun, but he later remembered seeing one. He testified that he "basically" remembered the gun and that Butler *432 was the person with the gun who took Lisle's cell phone and the money. Lisle admitted that, when interviewed after the robbery, he truthfully told police that Butler had a gun, but he later claimed that the police were "egging [him] on" and "driving [him] crazy," so he told them "everything they told me to say." Lisle also admitted that Butler spoke to him before trial, telling Lisle to contact trial counsel and say that there had been no gun and that the robber had only a drawstring bag. Lisle felt "pressured under the moment" to contact Butler's trial counsel. Lisle vacillated as to whether he was under pressure from Butler when he later spoke with the investigator. Lisle also testified that Butler did not "personally pressure" him but that, if he did not do what Butler wanted him to do, it was not "going to be too good for [Lisle], honestly."
The investigator testified that Lisle had told her he was so high the day of the robbery that he remembered seeing only a drawstring bag; he could not remember a gun, and, if there had been a gun, he could not have said what kind of gun it was. Lisle just wanted to "go back to his girlfriend in the motel, but detectives told him he was not going anywhere until he wrote a statement, or else he was going to jail." Lisle also told the investigator that he was not under any pressure to talk with her and that he did not remember what he had said in his statement to police or whether he had identified the right person in the lineup.
The jury found Butler guilty of robbery and armed criminal action based on his conduct toward Deputy Taylor, but the jury found him not guilty of robbery and armed criminal action involving his conduct toward Lisle. The trial court sentenced Butler as a persistent offender to consecutive terms of thirty years' imprisonment for robbery and twenty years' imprisonment for armed criminal action. Although the State did not plead or prove, and the trial court did not find, Butler to be a Dangerous Offender, the judgment stated, "The defendant has been found beyond a reasonable doubt to be a: Dangerous Offender ( 558.016 RSMo )."
On direct appeal, Butler challenged the admissibility of the firearm located by Agent Lett, arguing that the firearm was neither logically nor legally relevant to the charges against him. State v. Butler , WD76747, memo. at 5 (Mo. App. W.D. April 7, 2015). This court rejected Butler's admissibility challenge, finding that Deputy Taylor's testimony alone was sufficient to admit the firearm as "the firearm" involved in the robbery. Id. at 6. We affirmed Butler's convictions and sentences on direct appeal. State v. Butler , 457 S.W.3d 897 (Mo. App. W.D. 2015). We issued our mandate on April 29, 2015.
Butler timely filed pro se and amended Rule 29.15 motions, and the motion court held an evidentiary hearing, during which trial counsel and Butler, among others, testified. Trial counsel testified that "our whole trial strategy wrapped around trying to show that [Butler] just merely stole some money and never had a weapon to actually commit the offense of robbery or armed criminal action." Trial counsel also testified that he was an experienced trial attorney at the time of Butler's trial. As to Butler's claim that trial counsel was ineffective for failing to object to Deputy Taylor's testimony about "big drug dealers out there," trial counsel testified that, while he did not have a trial strategy regarding that testimony, he did not consider an objection to Deputy Taylor's testimony to be "a lawful objection." Regarding Butler's claim that trial counsel was ineffective for failing to depose Lisle, counsel testified that the funds for depositions were not approved,[5] *433 but the lack of a deposition did not limit counsel's ability to effectively cross-examine Lisle; counsel was able to both fully cross-examine Lisle and discredit him on several issues.
Butler testified that, if trial counsel had deposed Lisle, counsel would have learned that the incident was just a drug buy and that Butler did not have a weapon. Butler further testified that he informed trial counsel of the information Butler had about Lisle and that counsel was able to use that information to cross-examine Lisle. The State then asked Butler, "So whether [Lisle] was deposed or not, [counsel] still got to use the same information to your benefit; correct?" Butler replied, "Yes." With respect to his claim that trial counsel was ineffective for failing to depose law enforcement personnel involved in his arrest, Butler testified that, had counsel taken those depositions, he would have been able to show the police investigation was inadequate.
The motion court issued findings of fact and conclusions of law denying Butler's amended Rule 29.15 motion. As to Butler's claim that trial counsel was ineffective for failing to object to Deputy Taylor's testimony, the motion court concluded that Butler failed to show that an objection would have been meritorious. The court noted,
Taylor's testimony, regarding why undercover informants are used by the drug squad and their purpose, does not associate [Butler] with any specific prior crime or prior drug dealing. Taylor did not testify that [Butler] was a career drug dealer and did not testify or allude that she had dealt with him in the past. Taylor's testimony does not specifically reference any uncharged drug dealing and therefore it does not constitute prior criminal or bad act testimony. Taylor's testimony did not amount to propensity evidence-it was both logical and relevant evidence in that it gave the jury a general background on why confidential informants are used by law enforcement agencies.
The court also concluded that Butler was not prejudiced by trial counsel's failure to object to Deputy Taylor's testimony.
Regarding Butler's claim that trial counsel was ineffective for failing to depose Lisle, the motion court found that Butler did not prove either deficient performance or prejudice. In support of its conclusion, the court noted that, "[a]t the evidentiary hearing[,] both [trial counsel and Butler] acknowledged and agreed that [counsel] was still able to vigorously cross-examine [Lisle] even without a deposition. In fact, [Butler] was found not guilty with respect to the robbery of [Lisle]." Finally, with respect to Butler's claim that trial counsel was ineffective for failing to depose the State's other witnesses, the court concluded that Butler failed to prove either deficient performance or prejudice where he did not provide any specific information about what those depositions would have established.
Butler appeals.
Standard of Review
We "review[ ] the denial of [a motion for] post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous." Watson v. State , 520 S.W.3d 423, 428 (Mo. banc 2017). "A motion court's findings and conclusions are clearly erroneous only if ..., after reviewing the entire *434 record, [we are] left with the definite and firm impression that a mistake has been made." McKay v. State , 520 S.W.3d 782, 785 (Mo. banc 2017). "The motion court's findings are presumed correct." Mallow v. State , 439 S.W.3d 764, 768 (Mo. banc 2014).
Analysis
In his first two points on appeal, Butler claims that the trial court clearly erred in denying his Rule 29.15 motion because trial counsel was ineffective for failing to (1) object to impermissible prior bad acts and propensity evidence (Point I) and (2) depose the State's witnesses (Point II). In this third point, Butler claims the trial court committed a clerical error and asks this court to remand his case for issuance of a nunc pro tunc order. We address each point in turn.
1. Butler is not entitled to post-conviction relief for ineffective assistance of counsel.
"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the Strickland test." Watson , 520 S.W.3d at 435 (citing Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ). "Under Strickland , [a movant] must demonstrate: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." Id. We presume that counsel both rendered adequate assistance and exercised reasonable professional judgment and that any challenged action was based upon sound trial strategy. Barton v. State , 432 S.W.3d 741, 749 (Mo. banc 2014). The moving party must present evidence to rebut and overcome that presumption. State v. Tokar , 918 S.W.2d 753, 768 (Mo. banc 1996). "To demonstrate prejudice [by counsel's ineffective assistance], a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the [trial] would have been different." Barton , 432 S.W.3d at 749 (quoting Johnson v. State , 333 S.W.3d 459, 463 (Mo. banc 2011) ). "If either the performance prong or the prejudice prong is not met, then [the court] need not consider the other," and the movant's claim must fail. Neal v. State , 379 S.W.3d 209, 216 (Mo. App. W.D. 2012) (citing Strickland , 466 U.S. at 687, 104 S.Ct. 2052 ).
A. Trial counsel's decision not to object was reasonable.
In this first point on appeal, Butler claims that trial counsel was ineffective for failing to object when Deputy Taylor testified that she worked with confidential informants so they could introduce her to "the big drug dealers out there." Butler argues that the State elicited this information from Deputy Taylor to brand Butler as a career drug dealer and that it was impermissible evidence of prior bad acts and propensity. The motion court rejected this claim, finding Butler failed to show that an objection to Deputy Taylor's testimony would have been meritorious. We agree.
"[I]neffective assistance of counsel is rarely found in cases [where trial counsel has failed] to object." Johnson v. State , 330 S.W.3d 132, 139 (Mo. App. W.D. 2010) (quoting Williams v. State , 205 S.W.3d 300, 305 (Mo. App. W.D. 2006) ). "To establish a claim of ineffective assistance of counsel for failure to object, a movant must show 1) that the objection would have been meritorious and 2) that the failure to object substantially deprived the movant of his right to a fair trial."
*435 Jackson v. State , 205 S.W.3d 282, 288 (Mo. App. E.D. 2006). Counsel is not ineffective for declining to make a meritless objection. Tisius v. State , 519 S.W.3d 413, 429 (Mo. banc 2017).
"Evidence of prior uncharged misconduct is inadmissible for the sole purpose of showing ... propensity ... to commit such acts." State v. Jensen , 524 S.W.3d 33, 41 (Mo. banc 2017) (quoting State v. Miller , 372 S.W.3d 455, 473 (Mo. banc 2012) ). Vague and indefinite references to uncharged crimes are insufficient to warrant reversal on the grounds of being improper references to uncharged crimes. Id. "The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." Id. (quoting State v. Slagle , 206 S.W.3d 404, 410 (Mo. App. W.D. 2006) ).
Deputy Taylor testified that the Clay County Drug Task Force worked with confidential informants who "introduce [undercover task force members] to the big drug dealers out there." She explained, "it's not easy for me to come to a drug dealer and say, hey, I want to buy drugs from you, because ..., they don't trust me." Finally, in response to a question about the location of backup officers during an undercover drug buy, Deputy Taylor testified, "it varies, depending on, on the location, because some of the drug dealers have counter surveillance, we have to be careful." At the evidentiary hearing, trial counsel, who was an experienced trial attorney at the time of Butler's trial, testified that he did not consider an objection to Deputy Taylor's testimony to be "a lawful objection."
Butler failed to show that an objection to Deputy Taylor's testimony would have been meritorious. As the motion court noted, Deputy Taylor did not testify that Butler was a "big drug dealer." Instead, her testimony provided general background information on the task force's use of confidential informants. She did not associate Butler with any specific prior drug deals, nor did she testify that he was a career drug dealer. In fact, she did not testify to his involvement in any prior criminal activity of any kind, nor did she even allude to having encountered him before. Deputy Taylor's testimony did not clearly and definitely associate Butler with uncharged crimes.[6] Therefore, as the motion court concluded, Deputy Taylor's testimony did not constitute inadmissible prior crimes or bad acts testimony. Likewise, her testimony did not amount to propensity evidence; her testimony was both logically and legally relevant evidence in that it provided general background information about law enforcement's use of confidential informants. Moreover, any reference to Butler dealing drugs was limited to explaining the facts and circumstances surrounding the robbery and armed criminal action charges. Jensen , 524 S.W.3d at 41 (such evidence may "be admitted 'to present a complete and coherent picture' of the circumstances of the charged offense." (quoting State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011) )).
The motion court credited trial counsel's testimony that he did not believe an objection to Deputy Taylor's testimony would have been "a lawful objection." Had trial counsel objected to Deputy Taylor's testimony, the court likely would have overruled *436 the objection. Failure to make a non-meritorious objection is not a basis for finding that trial counsel was ineffective. Tisius , 519 S.W.3d at 429.
Because trial counsel's decision not to object to Deputy Taylor's testimony about confidential informants was reasonable, we need not address Butler's claim that he was prejudiced by trial counsel's conduct. Point I is denied.
B. Butler cannot show that he was prejudiced by trial counsel's failure to depose the State's witnesses.
In his second point, Butler asserts that trial counsel was ineffective for failing to depose the State's witnesses. He claims that the Public Defender's office's refusal to pay for depositions amounted to a constructive denial of the assistance of counsel and prejudice should be presumed or, alternatively, Butler was prejudiced because trial counsel was unable to impeach the State's witnesses using their prior sworn statements. The motion court rejected Butler's claim, finding that he failed to prove either deficient performance or prejudice. Because the record does not support a finding that Butler was prejudiced by trial counsel's failure to depose the State's witnesses, we find that the motion court did not clearly err in denying Butler's claim.[7]
To prevail on an ineffective assistance of counsel claim, the movant must show both "that counsel's representation fell below an objective standard of reasonableness" and that movant was prejudiced thereby. Strickland , 466 U.S. at 687-88, 104 S.Ct. 2052. Because the record does not support a finding that Butler was prejudiced by the lack of depositions, we need not address whether trial counsel's representation fell below the objective standard of reasonableness in this regard.
When claiming ineffective assistance of counsel for failing to take depositions, the movant must prove that the depositions would have revealed information that could have altered the outcome of the trial. Hutton v. State , 345 S.W.3d 373, 379-80 (Mo. App. W.D. 2011). On appeal, Butler complains primarily about the fact that trial counsel failed to depose Lisle, but Butler does not show a reasonable probability that deposing Lisle would have changed the outcome at trial. In fact, given the shifting accounts Lisle gave concerning what he witnessed on May 17, 2012, we have no assurance as to precisely what Lisle would have said if he had been deposed following his conversation with the Public Defender's investigator; thus, Butler fails to show a reasonable probability *437 that deposing Lisle would have altered the outcome. At the evidentiary hearing, both trial counsel and Butler acknowledged and agreed that trial counsel was still able to vigorously cross-examine Lisle without a deposition. And trial counsel was able to impeach Lisle's testimony by presenting his prior inconsistent statements through the testimony of counsel's investigator. Through cross-examination of Butler and direct examination of the investigator, trial counsel was able to impeach Lisle on the key issues raised by Butler-whether Butler had a gun, whether Lisle's statement to police after the robbery was truthful, and whether Butler pressured Lisle to recant his statement to police. In fact, trial counsel was so successful in impeaching Lisle that Butler was found not guilty with respect to the charged crimes against Lisle.
Moreover, in a situation like this, where there is overwhelming evidence of guilt, a movant fails to establish Strickland prejudice. Dawson v. State , 315 S.W.3d 726, 733 (Mo. App. W.D. 2010). Deputy Taylor identified Butler in a photo lineup and at trial. Another officer saw Butler flee the scene and get into a white Ford Explorer. Police followed that vehicle until it stopped and Butler fled on foot. He was arrested shortly thereafter. Police found the stolen money in the Ford Explorer, in Butler's pockets, and on the path he took during the foot pursuit. Deputy Taylor testified about the incident and specifically about Butler's use of a gun. A gun matching the description of the one described by Deputy Taylor was found the next day in the same area. Thus, the evidence overwhelmingly established that Butler committed the robbery.
As to the depositions of the State's other witnesses, Butler alleged no facts and presented no evidence of any potential testimony that would have been discovered from those depositions that would have benefitted his defense. Butler merely relied on his own conclusory allegation that depositions would have "been able to expose that their investigation was inadequate," which provided no explanation of what potential testimony would have established such a conclusion. Conclusory post-conviction allegations of prejudice without specific evidence showing how the alleged deficient performance would have led to a likely different result are insufficient to establish ineffective assistance of counsel. Giammanco v. State , 416 S.W.3d 833, 843 (Mo. App. E.D. 2013) (movant failed to specify in what way counsels' failure to depose witnesses allegedly prejudiced the defense); see also Morrow v. State , 21 S.W.3d 819, 824 (Mo. banc 2000) ("Where the pleadings consist only of bare assertions and conclusions, a motion court cannot meaningfully apply the Strickland standard for ineffective assistance of counsel.").
For these reasons, the motion court did not clearly err in denying Butler's claim of ineffective assistance of counsel stemming from counsel's failure to depose the State's witnesses. Point II is denied.
2. Butler's request for remand with instructions to enter a nunc pro tunc order is not properly before this court.
In his third point, Butler asks this court to remand the case with instructions to the circuit court to enter a nunc pro tunc order to correct a clerical error in the judgment. The judgment states, "The defendant has been found beyond a reasonable doubt to be a: Dangerous Offender ( 558.016 RSMo )." The parties agree that the statement is an error; the State did not plead or prove, and the trial court did not find, that Butler is a Dangerous Offender.
Butler asks this court to remand the case with instructions to the circuit court to enter a nunc pro tunc order correcting *438 the error. In support of his position, Butler cites Rule 29.12(c), which states, in part, "[c]lerical mistakes in judgments ... may be corrected by the court at any time after such notice, if any, as the court orders." He also argues that remand is appropriate here because this court currently has supervisory authority over the judgment below and Rule 84.14 directs us to "reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give ... [and u]nless justice otherwise requires, the court shall dispose finally of the case."
The State contends that Butler's request for remand is not properly before this court because Butler did not raise this issue in his amended Rule 29.15 motion. Appellate review of the motion court's denial of a Rule 29.15 motion "shall be limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k); Davis v. State , 486 S.W.3d 898, 905 (Mo. banc 2016). Thus, "[c]laims not raised in a Rule 29.15 motion are waived on appeal." Dorsey v. State , 448 S.W.3d 276, 284 (Mo. banc 2014). Because Butler's amended motion did not include a request for remand to correct the judgment nunc pro tunc , he waived that request on appeal, and the issue is not properly before us. See Hoskins v. State , 329 S.W.3d 695, 699 (Mo. banc 2010) (civil rule allowing plain error review of certain issues conflicts with the express wording of Rule 24.035 which requires all issues be preserved in motions filed under that rule).
However, as the parties recognize, the Eastern District of this court remanded a case with instructions to enter a nunc pro tunc order to correct a clerical error in a judgment under circumstances similar to Butler's case. McArthur v. State , 428 S.W.3d 774, 781-82 (Mo. App. E.D. 2014). In McArthur , the movant seeking post-conviction relief claimed that the trial court's written judgment and sentence, which provided for concurrent sentences of ninety-nine years' imprisonment, conflicted with the court's oral pronouncement of concurrent sentences of life imprisonment. Id. at 781. On appeal, the movant sought correction of the mistake under Rule 29.12(c), asking the court to either amend his written sentence to reflect the trial court's oral pronouncement or remand for correction of his judgment nunc pro tunc. Id. The court agreed with movant that there was a conflict between the trial court's written judgment and oral pronouncement, the latter prevailed, and the mistake was clerical in nature. Id. at 781-82. The court concluded that such a mistake may be corrected by a nunc pro tunc order, so the court remanded the case with instructions that the motion court enter an order conforming the judgment to the trial court's oral pronouncement of concurrent sentences of life imprisonment. Id. at 782.
The State believes McArthur was wrongly decided and should not be followed. We agree.[8] The Eastern District determined that Rule 29.12(c), dealing with the correction of clerical mistakes, was not barred by the prohibition on claims of plain error in a post-conviction appeal.
*439 Id. at 781-82, 781 n.8. But the Eastern District did not consider the effect of Rule 29.15(k), and McArthur is inconsistent with the Missouri Supreme Court's later holding in Dorsey that "[c]laims not raised in a Rule 29.15 motion are waived on appeal." Dorsey , 448 S.W.3d at 284.[9] Nor did the Eastern District consider that it was reviewing the judgment of the motion court, which had not committed the error, not the judgment and sentence of the criminal court in the underlying criminal case, as it would on a direct appeal. Because Rule 29.15(k) expressly limits our review to the motion court's judgment, not the underlying trial court's judgment, an order remanding the case for a judgment nunc pro tunc is beyond our authority. Thus, we decline to remand this case for correction of the judgment nunc pro tunc in the underlying case.
As the State noted, Butler has recourse to correct the error in his judgment. Courts retain jurisdiction to correct their judgments nunc pro tunc under their independent jurisdiction over their own records. State v. Johnson , 524 S.W.3d 137, 141 (Mo. App. W.D. 2017). Therefore, Butler may file a request in the trial court in the underlying criminal case to correct its record nunc pro tunc , and, should that court conclude that the error was clerical, the court has the authority to make the correction itself.
Point III is denied.
Conclusion
The motion court did not clearly err in denying Butler's Rule 29.15 motion for post-conviction relief. Its judgment is affirmed. We conclude that Butler's request to remand this case with instructions that the motion court enter a nunc pro tunc order is not properly before us; accordingly, we deny that request.
Alok Ahuja and Edward R. Ardini, Jr., Judges, concur.

All rule references are to the Missouri Supreme Court Rules (2017).

The facts of Butler's underlying offenses here presented are taken from the memorandum issued in his direct appeal, State v. Butler , 457 S.W.3d 897 (Mo. App. W.D. 2015), without further attribution.

All statutory references are to the Revised Statutes of Missouri (2012), unless otherwise indicated.

Also before trial, defense counsel filed a motion in limine to, among other things, prevent the State from adducing evidence that Butler had been arrested and convicted of other crimes. The State agreed with the defense's motion on that point but explained that, in its case-in-chief, the State would briefly describe the events that brought Butler, Lisle, and Deputy Taylor together the evening of the robbery.

Trial counsel testified that the District Director's policy was that, "if you had law enforcement officers that had written reports, then generally the request for funding depositions would not be approved."

The cases Butler cites do not support his position because those cases involved the admission of evidence directly linking the defendants to uncharged crimes. See Kenner v. State , 709 S.W.2d 536, 539-41 (Mo. App. E.D. 1986) (counsel was ineffective for failing to object to evidence linking burglary suspect to prior, uncharged burglary and drug use); State v. Henderson , 105 S.W.3d 491, 497-98 (Mo. App. W.D. 2003) (trial court committed prejudicial error in admitting evidence of uncharged shooting in murder trial).

Butler makes two distinct arguments regarding prejudice. First, he argues that the refusal to pay for depositions created a constructive denial of counsel and, therefore, prejudice should be presumed. The State contends that Butler did not preserve a constructive denial of counsel claim, but, even if he had preserved it-a finding we do not make-the claim would have been meritless. Claims of deficient performance for failing to conduct certain investigations do not amount to the complete failure by counsel to subject the prosecution's case to meaningful adversarial testing required to establish a claim of constructive denial of counsel. See Donaldson v. State , 775 S.W.2d 237, 238 (Mo. App. E.D. 1989) (claim of failure to investigate fingerprint evidence was not a claim of constructive denial of counsel, so movant was required to plead and prove prejudice); Polk v. State , 539 S.W.3d 808, 815-17 (Mo. App. W.D. 2017) (constructive denial of counsel requires either a complete absence of counsel or a complete failure by counsel to subject the State's case to adversarial testing).
Second, Butler argues that, but for trial counsel's failure to depose the State's witnesses, there is a reasonable probability of a different outcome at trial. We address Butler's second prejudice argument in the text of our opinion.

In accordance with Supreme Court Operating Rule 22.01 and Western District Special Rule 31, our decision not to follow the previous decision of the Eastern District Court of Appeals in McArthur v. State , 428 S.W.3d 774 (Mo. App. E.D. 2014), has been reviewed en banc. An order stating that this opinion has been reviewed and approved by order of the court en banc has been signed by the chief judge and placed in the case file. While, as noted in this opinion, there are subsequent Missouri Supreme Court cases that appear to be inconsistent with the Eastern District's reasoning in McArthur , since the Supreme Court has not expressly overruled McArthur , we address it as though it remains good law.

We also note that, in Hoskins v. State , 329 S.W.3d 695, 699 n.6 (Mo. banc 2010), the Supreme Court cited with disapproval McDonald v. State , 141 S.W.3d 526, 529 (Mo. App. S.D. 2004), which purported to correct a "clerical" error in a criminal judgment in a post-conviction proceeding, even though the issue had not been raised in the motion court.