

# In the
# Missouri Court of Appeals
## Western District

FRANK JINDRA,                    )
                                 )
        Appellant,         )    WD81689
                                 )
v.                               )    OPINION FILED: July 30, 2019
                                 )
STATE OF MISSOURI,               )
                                 )
        Respondent.        )

**Appeal from the Circuit Court of Howard County, Missouri**
The Honorable Scott A. Hayes, Judge

Before Division One: Victor C. Howard, Presiding Judge, Lisa White Hardwick, Judge
and Gary D. Witt, Judge

Frank Jindra ("Jindra") brings this appeal from Howard County Circuit Court challenging the motion court's denial of his Rule 29.15[1] motion alleging ineffective assistance of counsel following an evidentiary hearing. Jindra argues that the motion court erred in denying his Rule 29.15 motion because his trial counsel ("Trial Counsel") was ineffective in failing to call a witness that he believes would have corroborated his defense. Jindra further argues that the motion court erred in denying his Rule 29.15 motion because Trial Counsel was ineffective in failing to thoroughly investigate a note in the discovery

---

[1] All rule references are to Missouri Supreme Court Rules (2018), unless otherwise indicated.

handwritten by Officer Alexandria Leiva ("Officer Leiva") which provided more clarity as to the target of his threatening statements. We affirm.

## Statement of Facts

On February 23, 2015, Jindra filed in Boone County Circuit Court adult abuse petitions pursuant to Section 455.007 *et. seq*., requesting *ex parte* orders of protection against two of his tenants. He filed the petitions in person and deputy court clerk Latoya Gatewood ("Gatewood") received the filings. Judge Leslie Schneider ("Judge Schneider") denied the requests for *ex parte* relief in the petitions the following day but set the matters for hearing on the request for full orders of protection. Jindra called the courthouse to check the status of his petitions and Gatewood informed him that they had been denied but that a hearing had been set. Jindra expressed concern about his relationship with his tenants and Gatewood advised him to contact law enforcement. Jindra asked Gatewood which judge had denied his petitions and she told him that it had been Judge Schneider. Jindra, appeared very frustrated and angry and told Gatewood that, "[Judge Schneider] would be on the NBC 17 news," and that he was "going to get his gun." Gatewood, believing the statements to be threats toward Judge Schneider, then ended the conversation and called Judge Schneider who told her to contact the court Marshals.

The Boone County Sheriff's Department and court marshals were contacted. Judge Schneider did a casenet search to see what she could learn about Jindra and determined that an attorney in her husband's law firm had previously represented him in a prior order of protection case. She contacted her husband, Tom Schneider ("Mr. Schneider") regarding Jindra's statements to Gatewood and he advised her to take the threat seriously. Jindra had

2

previously been represented by Curt Branson ("Branson") of Jones, Schneider, & Stevens law firm where Mr. Schneider was a senior partner.

Beginning early the same day, Jindra called the Jones, Schneider, & Stevens law firm multiple times requesting to speak with Branson. After his conversation with Gatewood, he called the firm requesting to speak with Mr. Schneider. The receptionist, Dena McMasters ("McMasters") told Jindra that Mr. Schneider was not available and he continued to hang up and call back repeatedly. McMasters asked Jindra why he needed to speak with Mr. Schneider and Jindra responded that it was because he was married to Judge Schneider. During the course of the many phone calls, Jindra became increasingly angry, upset, loud and belligerent. Jindra told McMasters that the firm had, "a really nice private parking lot, and that … maybe [they] would like to have happen to [them] what had happened to him in his parking lot in [their] nice parking lot" and then hung up. When McMasters relayed the statement Jindra made about the parking lot to Branson, he advised her that based on other knowledge he had of Jindra that the statement should be considered a threat. Approximately 20-30 minutes after Judge Schneider informed Mr. Schneider about the threats, Jindra's phone call was put through to Mr. Schneider. As soon as Mr. Schneider learned that it was Jindra on the phone, he informed Jindra "I can't talk to you" and hung up.

Law enforcement officers were dispatched to Jindra's residence. When they knocked, Jindra opened the door while holding a rifle. The officers drew their weapons and Jindra was ordered to drop his rifle. Instead he passed the rifle back and forth between

3

his hands before finally surrendering it to an officer. He was read his *Miranda*[2] rights and agreed to speak with the officers. He told the officers that he had called the courthouse and spoken with a woman who informed him Judge Schneider had denied his petitions. He admitted to making the statements to Gatewood and he admitted to calling Mr. Schneider, "to get him to talk to his wife and see reason." Jindra acknowledged he told the court clerk that he owned a rifle and that Judge Schneider would end up on the news. He also said that he did not make threats what he made were promises. He stated that he promised he "would shoot them in the legs and not kill them." He did not clarify who he was referring to when he said he would shoot someone in the legs.

Jindra was charged with two counts of the Class C Felony of tampering with a Judicial Officer; Count I regarding the statements he made to Gatewood towards Judge Schneider and Count II for his statements to McMasters while attempting to contact Mr. Schneider. The jury found Jindra guilty and he was sentenced to one year for Count I and six months in county jail for Count II, with the sentences to run consecutively. The Court suspended execution of the sentence on Count II and placed Jindra on a five-year term of probation.

Jindra's convictions were affirmed on direct appeal to this Court. *State v. Jindra*, 504 S.W.3d 187, 192 (Mo. App. W.D. 2016). In his amended Rule 29.15 motion Jindra argues, in pertinent part, that Trial Counsel erred in failing to thoroughly investigate and call Branson as a witness and Trial Counsel failed to thoroughly investigate and determine

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the author of a handwritten note that was included in discovery. The note stated, "said had rifle, said wasn't going to kill tenants, but shoot in legs."

The motion court held an evidentiary hearing on February 26, 2018 ("Motion Hearing"). Branson testified at the Motion Hearing that he was called the day after "the incident" and during that phone call, Jindra told Branson that if "[Branson] didn't protect him and the court didn't protect him, he'd get a gun and protect himself."[3] Branson testified that it was likely the tenants that Jindra was afraid of and wanted protection from but Branson couldn't say for sure. Trial Counsel also testified at the hearing. Trial Counsel testified that the decision not to call Branson as a witness was trial strategy because it may have had a "more negative impact than a positive impact." Trial Counsel also testified that he did not know who wrote the handwritten note in the file but he did ask opposing counsel at trial and counsel said she did not know. Trial Counsel testified that he believed he also asked Gatewood if she was the author of the note but could not recall for sure. He also testified that he was not sure if he asked Officer Leiva if she was the author and that while he believed the note would have been useful, he also thought that the other deputies he called at trial put the testimony of Officer Leiva in a negative light and her credibility was diminished.

Officer Leiva was also questioned at the Motion Hearing regarding a handwritten note contained in the discovery. The note stated, "said had rifle, said wasn't going to kill tenants, but shoot in legs." Officer Leiva testified at the Motion Hearing that she was the

---

[3] It is unclear from the transcript which "incident" this was referring to. Branson testified that he had previously represented Jindra on a prior petition for an order of protection that was denied following an evidentiary hearing.

5

author of the handwritten note and it was in her handwriting. Officer Leiva could not recall who she was speaking to at the time or who provided her with the information and it could have been the court marshal, Judge Schneider, or the court clerk. At the hearing, Officer Leiva testified that when she spoke to Jindra on the day of the incident he "promised to shoot them in the legs, and not kill them," but that she did not know who he was referring to when he stated "them." Jindra argues that Trial Counsel could have used the note to argue that the threats he made were directed at the tenants and not Judge Schneider.

The motion court entered its judgment on March 21, 2018, denying Jindra's amended Rule 29.15 Motion. The motion court found that it was trial strategy to not call Jindra's former attorney and this did not fall below an objective standard of reasonableness. The motion court further found that even if Trial Counsel was ineffective in failing to call Jindra's former attorney, Jindra had not been prejudiced because, considering the totality and strength of the other evidence of guilt, there is no reasonable probability that, absent the alleged error, the fact finder would have had reasonable doubt as to guilt.

Trial Counsel was aware of the handwritten note but was under the impression it was the words of the Clerk or Judge and it contained hearsay contents that would not have been admissible at trial. The motion court found that Trial Counsel's strategy to focus on a particular defense and not the note did not fall below an objective standard of reasonableness. Further, even if Trial Counsel was ineffective for failing to pursue the author of the note, Jindra had not established prejudice because there is no reasonable probability that, absent the alleged error, the fact finder would have a reasonable doubt as to guilt.

6

This appeal followed.

## Standard of Review

In reviewing a motion court's denial of a claim for ineffective assistance of counsel the motion court's ruling is presumed correct. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). The court is limited to "a determination of whether the findings of fact and conclusions of law are clearly erroneous." *Patterson v. State*, 110 S.W.3d 896, 900 (Mo. App. W.D. 2003). The judgment is clearly erroneous when, "the court is left with the definite and firm impression that a mistake has been made." *Middleton v. State*, 80 S.W.3d 799, 804 (Mo. banc 2002). The facts are interpreted, "in the light most favorable to the verdict[,]" and the movant must show that the motion court clearly erred by a preponderance of the evidence. *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996); *see Harrison v. State*, 531 S.W.3d 611, 616 (Mo. App. W.D. 2017).

To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy the two-pronged *Strickland* test. *Strickland v. Washington*, 466 U.S. 668 (1984) First, to prove counsel was ineffective, the movant must show that counsel failed to perform to the degree of skill, care, and diligence that a reasonably competent attorney would under similar circumstances. *Id.* 687. This requires that the movant show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Next the movant must also show that they were prejudiced by this failure. *Id.* at 687. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). "If either the performance prong or the

7

prejudice prong is not met, then [the court] need not consider the other, and the movant's claim must fail." *Butler v. State,* 557 S.W.3d 427, 434 (Mo. App. W.D. 2018) (internal quotation omitted). "A movant must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson*, 406 S.W.3d at 899. "To overcome this presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *Id.* (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)). "Trial strategy decisions may be a basis for ineffective counsel only if that decision was unreasonable." *Id.*

## Analysis

Jindra raises two points on appeal. In Point One, Jindra argues that the motion court erred in denying his amended Rule 29.15 motion because it violated his right to effective assistance of counsel since Trial Counsel failed to investigate and call Branson as a witness. In Point Two, Jindra argues that the motion court erred in denying his amended Rule 29.15 motion because it violated his right to effective assistance of counsel since Trial Counsel failed to thoroughly investigate and introduce into evidence Officer Leiva's handwritten note.

## Point One

In his first point on appeal, Jindra argues that Trial Counsel was ineffective for failing to thoroughly investigate and call Branson as a witness. Jindra contends that Trial Counsel was ineffective because had he called Branson as a witness, his testimony would have added credibility to his defense. Jindra argues that Trial Counsel did not thoroughly investigate because he did not contact Branson to determine if his concerns regarding

8

calling him at trial were well founded. Jindra argues that even if Trial Counsel is credited with a reasonable investigation into Branson, his decision not to call him was unreasonable because anything Branson would have testified to was already in evidence so Jindra could not have been put in a more negative light.

"The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Vaca v. State*, 314 S.W.3d 331, 335 (Mo. banc 2010) (quoting *Anderson v. State*, 196 S.W.3d 28, 37 (Mo. banc 2006)); *Williams v. State*, 168 S.W.3d 433, 443 (Mo. banc 2005). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Vaca*, 314 SW.3d at 335 (quoting *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997)). A witness may not be called if counsel believes their testimony will be more damaging than it is helpful. *Davis v. State*, 761 S.W.2d 636, 637-38 (Mo. App. E.D. 1988). The burden is on the movant to show that ""(1) counsel knew or should have known of the existence of the witness, (2) the witness could be located through a reasonable investigation, (3) the witness would testify, and (4) the testimony of the witness would have produced a viable defense." *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012).

At the Motion Hearing, Trial Counsel testified that the decision not to call Branson as a witness was part of his trial strategy. Counsel was aware of Branson and the conversation Jindra had with him regarding shooting his tenants in the leg. Jindra and Trial Counsel discussed the decision whether to call Branson as a witness. From the information provided, Trial Counsel reasonably determined that there was no reason to investigate

9

further by contacting Branson because he determined Branson's testimony would, in Trial Counsel's opinion, have only put Jindra in a negative light as a violent person. Further, it was only when McMasters discussed with Branson the comments Jindra made on the phone regarding the law firm's parking lot, that he informed her this should be considered a significant threat. Why Branson found this to be a threat was never presented to the jury because of attorney/client privilege between Jindra and Branson. Had Trial Counsel placed him on the stand in trial, the reasons for his concerns regarding this language may have been placed before the jury. Trial Counsel had no obligation to call Branson as a witness once he deemed that doing so would not help his client's case. Jindra's statements to Branson implied a willingness to use violence and specifically gun violence against someone.

At the Motion Hearing, Branson's testimony was extremely limited.[4] He testified that he recalled giving a statement to the police at the time of the underlying events but had little recollection of the specific facts. He testified that he had represented Jindra in a prior order of protection matter and that the request for relief had been denied following an evidentiary hearing. While Branson had no recollection of the exact conversation, he agreed that the police report reflected that he told the officer that Jindra informed him at some point after the hearing that if the courts were not going to protect him that he would get a gun and protect himself. He testified that he didn't know for sure, but Jindra may have been referring to the tenants when he said he would get a gun to protect himself. Even

---

[4] Jindra signed a waiver of attorney client privilege to allow Branson to testify about their conversation.

had Branson been called at trial he would not be testifying about the charged conduct but solely about a conversation that occurred on a different day, prior to the events in question. This testimony did not corroborate Jindra's testimony regarding the charged conduct. It was a reasonable trial strategy to assume that Branson's testimony would not have provided a viable defense and consequently the decision not to call him as a witness was reasonable. Jindra has failed to show that Trial Counsel was ineffective because Trial Counsel conducted an investigation and made the decision not to call Branson as part of a reasonable trial strategy.[5]

As Jindra has failed to satisfy the first prong of the *Strickland* test, we find no need to address the possibility of prejudice. Point One is denied.

## Point Two

In his second point on appeal, Jindra contends that the motion court erred in denying his amended Rule 29.15 Motion because it violated his right to effective assistance of counsel since Trial Counsel failed to thoroughly investigate and introduce into evidence at trial a handwritten note made by Officer Leiva and located in the discovery. The note stated, "said had rifle, said wasn't going to kill tenants, but shoot in legs." Jindra contends that the note would have corroborated his defense that his statements were directed towards his tenants and not Judge Schneider or Mr. Schneider. Further, Jindra argues that it would have been valuable to his defense for Officer Leiva to testify that she had written the note the day of the incident.

---

[5] Jindra further fails to establish that he was prejudiced by the failure to call Branson as a witness, however we do not need to reach the second *Strickland* prong due to Jindra's failure to meet the first prong. *Butler v. State,* 557 S.W.3d 427, 434 (Mo. App. W.D. 2018).

We find that we need not address whether Trial Counsel's failure to introduce the note into evidence fell below the standard of reasonably competent counsel because Jindra failed to meet his burden to demonstrate that he was prejudiced by such a failure. Jindra has the burden of proving that the probative value of the note was so high that counsel's failure to thoroughly investigate and introduce the note at trial prejudiced him. Prejudice exists where there "is a reasonable probability that but for his counsel's ineffectiveness, the result would have been different." *Rios v. State*, 368 S.W.3d 301, 305 (Mo. App. W.D. 2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A conceivable effect on the outcome is not enough to show prejudice. *Id.*

Trial Counsel testified at the Motion Hearing that the note would have been valuable but that during trial, he was unaware who had written the note but believed it had been Gatewood. At the time of trial, neither Trial Counsel nor the prosecutor were aware of the origin of the note. However, Trial Counsel had already lead with the defense that Jindra made statements to Branson regarding shooting his tenants in the leg to defend himself but denied having any similar conversation with Gatewood. Branson's testimony that Jindra claimed he would shoot his tenants in the leg was already in evidence. The note merely confirmed Branson's testimony, which was not in dispute or even part of the charged conduct.

Trial Counsel admits that the note would have been valuable at trial but that is not sufficient to show that the outcome would have been different had he chosen to pursue the note further. Not only was the note's origin unknown at the time of trial but its contents still contained a threat made by Jindra to shoot his tenants. Regardless of whether Jindra

12

intended to shoot his tenants or Judge Schneider, his statements are still indicative of a violent intention to shoot someone. Further, at trial, Gatewood would still have testified regarding Jindra's statements to her over the phone. Evidence regarding Jindra's repeated attempts to call Mr. Schneider would still have been presented, as well as Jindra's statements to the receptionist about the parking lot. At trial, Officer Leiva still testified that Jindra had made threats to shoot, "them in the legs." If the note had been further investigated and admitted into evidence, it in no way negates the evidence from other witnesses regarding Jindra's threats and actions on the day in question. Jindra failed to show that this note alone undermines our confidence in the judgment given the weight of the other evidence presented against him.

Point Two is denied.

## Conclusion

For the reasons stated above, the judgment is affirmed

_____
Gary D. Witt, Judge

All concur