In the
 Missouri Court of Appeals
 Western District
MICAH WYNES, )
 )
 Appellant, ) WD83891
 )
v. ) OPINION FILED: July 6, 2021
 )
STATE OF MISSOURI, )
 )
 Respondent. )

 Appeal from the Circuit Court of Clinton County, Missouri
 The Honorable Daren L. Adkins, Judge

 Before Special Division: Cynthia L. Martin, Chief Judge, Presiding, Lisa White
 Hardwick, Judge and Alok Ahuja, Judge

 Micah Wynes ("Wynes") appeals the denial of his pro se Rule 24.0351 motion to

set aside his guilty plea to the charge of murder in the second-degree. Wynes alleges that

the motion court committed clear error because his guilty plea was not voluntarily made

because he was under duress at the time he entered the plea. Wynes also alleges that he

received ineffective assistance of counsel because he was not advised that the lesser-

included offense of voluntary manslaughter could have been submitted to the jury.

Finding no error, we affirm.

 1
 All references to Rules are to Missouri Court Rules, Volume I -- State, 2021 unless otherwise noted.
 Factual Background and Procedural History

 Wynes was charged with murder in the first-degree on September 6, 2017, in

connection with the death of Donald Hadden ("Victim") on approximately July 5, 2015.

Victim's body was discovered on February 12, 2017, by hunters in the woods near

Cannonball Road and Missouri Highway 33 in Clinton County, Missouri.

 On December 4, 2018, the first day of Wynes's trial, Wynes announced that he

wished to plead guilty pursuant to an agreement with the State to amend his charge from

first-degree murder to second-degree murder. The State's plea offer had been extended to

Wynes about a week prior to trial. As a part of the plea agreement, the State agreed to

argue for a sentence of no more than twenty years, though Wynes would be required to

enter an open plea, exposing Wynes to a sentence within the full range of punishment of

up to thirty years or life imprisonment.

 During the guilty plea hearing, Wynes acknowledged reviewing the amended

information charging him with murder in the second-degree, and acknowledged having

had sufficient time to go over the document with his attorney. Wynes confirmed that he

understood the amended charge and the range of potential punishment. Wynes confirmed

on more than one occasion that he understood the trial court remained free to sentence

Wynes within the full range of punishment, and that if the court imposed a sentence in

excess of that argued by the State, Wynes would not be permitted to withdraw his guilty

plea.

 Wynes identified the petition to enter plea of guilty and waiver of rights filed on

his behalf, and acknowledged his signature on the petition. Wynes acknowledged

 2
reading and understanding the petition. The petition included two affirmations that are

material to this case. In paragraph 7, Wynes affirmed that his "attorney has counseled

and advised me on the nature of each charge, on all lesser-included offenses, if any, and

on all possible defenses that I might have in this case." In paragraph 15, Wynes affirmed

that "[n]either I, nor any of my friends or loved ones, has been mistreated, threatened,

coerced, or forced in any manner by anyone to get me to plead guilty, nor were there any

promises, inducements or representations made except as set forth in Paragraph 14

above."2

 Wynes confirmed in response to questioning that he had "absolutely no

complaints" about how trial counsel handled his case, and that he had not been

"threatened or coerced in any manner" to plead guilty. Specifically, Wynes confirmed

that there had been no "threat of physical violence to you, family, friends, [or] relatives"

that had in any manner caused him to plead guilty.

 When asked to explain his conduct giving rise to the amended charge, Wynes

admitted that he and another person (later described as Joseph Seward ("Seward")) had

Victim in a car and were driving around pleading with Victim to leave town and go to

Georgia. Wynes admitted that although he did not intend to take Victim's life, he was

"willing to do some harm to him" because he had heard Victim was a snitch. Wynes said

that when the car ran out of gas on a gravel road, he and Victim got out of the car.

Wynes said that he pulled out a shotgun, pointed it at Victim, pulled the trigger, and

 2
 Paragraph 14 acknowledged there had been no assurances of leniency; that Wynes was entering an open
plea; and that although the State would be suggesting a cap of twenty years, the sentence imposed would be "solely
a matter within the control of the Judge."

 3
continued to pull the trigger as Victim ran until, after hearing bushes rustling, it became

silent. Wynes said an uninvolved bystander then came by and assisted he and Seward

with getting gas, and that Wynes and Seward left the area. Wynes did not know whether

he had, in fact, shot Victim, but acknowledged that Victim "went missing" after this

altercation, and that as a result, Wynes believed he caused Victim's death with the

shotgun.

 The State added that its evidence would be that witnesses saw Victim, Wynes, and

Seward leave a hotel in the north part of Kansas City in a car, and that this was the last

time anyone besides Wynes or Seward saw Victim alive. The State advised that Seward

would testify that after driving for a long while in unfamiliar areas, the car ran out of gas,

and Wynes and Victim got out of the car. Seward heard a shotgun blast, and then saw

Victim react as if he had been hit in the arm or face. Victim started to run to nearby

woods, and Wynes took steps in the same direction and continued firing. Seward said

that he and Wynes later tried to find Victim's body, but could not determine exactly

where they were at the time Victim was shot, though Seward was able to generally

describe the area, including the unique orientation of the gravel road. The State noted

that when hunters found Victim's body nearly two years later, it was in an area that very

closely matched Seward's description. Scientific evidence would have established,

according to the State, that Victim's remains had been in the woods for an amount of time

that was consistent with Victim having been shot on July 5, 2015. After hearing the

State's recitation of the expected evidence, Wynes agreed with the evidence and noted he

had no amendments or corrections.

 4
 The trial court accepted Wynes's guilty plea and ordered a sentencing assessment

report. Following a sentencing hearing on February 20, 2019, where numerous witnesses

testified, the trial court announced a sentence of twenty-eight years. The trial court noted

in a docket sheet entry the particulars of Wynes's guilty plea and announced sentence,

followed by the statement "All as per formal Sentence & Judgment to be prepared and

filed." The trial court then entered a written judgment of conviction and sentence

("Judgment") on February 22, 2019.

 On August 20, 2019, Wynes filed a pro se Rule 24.035 motion ("Motion").

Retained counsel later entered an appearance and filed a statement that no amended

motion would be filed.3 The pro se Motion alleged that sentence was imposed on

February 20, 2019, although the Judgment was not filed until February 22, 2019.

 Although the Motion raised three claims, only two are at issue in this appeal.

Wynes claimed: (i) that he was coerced into pleading guilty by threats made to family

members, and that as a result, his guilty plea was not voluntary; and (ii) that trial counsel

did not advise him of lesser-included offenses, specifically voluntary manslaughter, and

that as a result, his guilty plea was not voluntary.

 3
 A week after this case was submitted, Wynes's counsel filed a memorandum and a report of filing
generated by the Missouri Courts eFiling System, and argued that the Motion was efiled on August 19, 2019 at
11:38 p.m. However, the same materials reflect the efiled Motion was not deemed accepted by the Clerk until
August 20, 2019. Wynes's counsel argues that the Clerk of the Circuit Court was obligated, without exception, to
treat the efiled document as filed on August 19, 2019. However, that argument was not made in Wynes's brief, or
during oral argument. And the materials Wynes's counsel filed a week after this case was submitted were not
accompanied by a request for leave of court to supplement the record on appeal as required by Rule 81.12(f), or to
file a supplemental brief as required by Western District Special Rule 37. Nor is there any indication that the
materials were a part of the record considered by the motion court. We therefore have not considered the
memorandum or materials improperly filed by Wynes's counsel after this case was submitted. Nonetheless, because,
as we discuss infra, we find that Wynes's Motion was timely filed, Wynes will suffer no prejudice from his counsel's
failure to properly address, before this case was submitted, any dispute regarding the date the Motion was filed.

 5
 At a hearing on the Motion on June 12, 2020, Wynes and his father, Randall

Wynes, testified. Wynes's trial counsel did not testify. The motion court found that the

purported threat about which Wynes and his father testified (which was allegedly made

by Victim) occurred before Victim was killed, and could not have influenced Wynes's

guilty plea. The motion court also found that Wynes's claim that he pled guilty under

duress because of this purported threat was expressly refuted by the record, as Wynes

testified during the guilty plea hearing that neither he, nor any member of his family,

friends, or relatives, had been threatened or coerced in any manner as to cause him to

plead guilty.

 With respect to Wynes's claim of ineffective assistance based on trial counsel's

alleged failure to advise Wynes of the lesser-included offense of voluntary manslaughter,

the motion court found that Wynes failed to "state that but for the failure of counsel to

advise of the lessor-included [sic] to second degree murder he would have proceeded to

trial as charged of first-degree murder and thus fails to establish that prejudice occurred."

In addition, the motion court found that Wynes failed to plead any facts in his Motion

that "show how 'sudden passion,' as contemplated in the voluntary manslaughter statute

arises or applies to his case." In addition, the motion court noted that Wynes's statement

during the guilty plea hearing about the circumstances that led to him shooting Victim

included no facts that would have supported submission of the lesser-included offense of

voluntary manslaughter.

 Based on these findings, the motion court entered findings of fact and conclusions

of law denying the Motion ("Rule 24.035 Judgment"). The 24.035 Judgment noted that

 6
Wynes "was sentenced on February 20, 2019," (the date of the sentencing hearing),

although the Judgment of conviction and sentence was not filed until February 22, 2019.

 Wynes appeals.

 Analysis

State's Request to Dismiss Wynes's Appeal

 Before addressing Wynes's points on appeal, we must address the State's request to

dismiss Wynes's appeal given the alleged untimeliness of the Motion. Relevant to this

case, Rule 24.035(b) provides:

 A person seeking relief pursuant to this Rule 24.035 shall file a motion to
 vacate, set aside or correct the judgment or sentence substantially in the
 form of Criminal Procedure Form No. 40. . . . The motion shall be filed no
 earlier than the date the sentence is entered if no appeal is taken . . . . If no
 appeal of such judgment or sentence is taken, the motion shall be filed
 within 180 days of the date the sentence is entered.

(Emphasis added.) "Failure to file a motion within the time provided by . . . Rule 24.035

shall constitute a complete waiver of any right to proceed under this Rule 24.035 and a

complete waiver of any claim that could be raised in a motion filed pursuant to . . . Rule

24.035." Rule 24.035(b).

 The State argues that both the Motion and the Rule 24.035 Judgment identify

February 20, 2019 as the date on which Wynes was sentenced. The Motion, which was

filed on Criminal Procedure Form No. 40, did, in fact, designate "2-20-2019" in response

to a question asking for the "date upon which sentence was imposed." And the Rule

24.035 Judgment recites that Wynes "was sentenced on February 20, 2019." The State

also notes that following the February 20, 2019 sentencing hearing, the trial court made a

 7
docket sheet entry on the same date describing Wynes's sentence. The State argues that

as a result, the Motion was untimely, as it was filed on August 20, 2019, 181 days after

February 20, 2019. The State also acknowledges, however, that the formal Judgment of

conviction and sentence was not filed until February 22, 2019. By this measure, Wynes's

Motion was timely, as it was filed 179 days after the Judgment.

 The State correctly notes that a Rule 24.035 movant is obligated to allege facts in a

pro se motion "showing he timely filed his motion." Dorris v. State, 360 S.W.3d 260,

267 (Mo. banc 2012). However, a movant can meet his burden of proof on the issue of

timeliness if "the time stamp on the file reflects that [the pro se motion] is within the time

limits proscribed in [Rule 24.035]." Id. Here, the time stamp on Wynes's Motion was

August 20, 2019. The novel issue presented in this case is whether that time stamp

should be compared to February 20, 2019 (the date Wynes's Motion recites as the date

sentence was "imposed," the date of the sentencing hearing and the trial court's

corresponding docket sheet entry, and the date the Rule 24.035 Judgment recites as the

date Wynes was sentenced), or to February 22, 2020 (the date the trial court filed the

Judgment of conviction and sentence).

 The plain language of Rule 24.035(b) resolves this issue. Relevant to this case,

Rule 24.035(b) provides that a Rule 24.035 motion "shall be filed within 180 days of the

date the sentence is entered if no appeal is taken." This suggests strongly that the

timeframe for filing a Rule 24.035 motion does not begin to run until a sentence can be

appealed. See Rule 24.035 ("If no appeal of such judgment or sentence is taken, the

motion shall be filed within 180 days of the date the sentence is entered.") In a criminal

 8
case, the right of appeal arises only after "the rendition of a final judgment." Rule

30.01(a) (emphasis added); see also, section 547.070 (authorizing appeals "[i]n all cases

of final judgment rendered upon any indictment or information . . . . ").4 A judgment of

conviction in a criminal case "shall set forth the plea, the verdict or findings, and the

adjudication and sentence." Rule 29.07(c) (emphasis added). Because a Rule 29.07(c)

judgment of conviction "shall" include the sentence imposed, we conclude that a sentence

is not entered (i.e., subject to the right of appeal) until a Rule 29.07(c) final judgment of

conviction is entered.5

 The trial court's oral announcement of Wynes's sentence on the record during the

sentencing hearing on February 20, 2019, did not constitute the entry of sentence in a

manner that could be appealed, and thus did not trigger the time within which Wynes was

required to file a Rule 24.035 motion. We reach the same conclusion with respect to the

trial court's February 20, 2019 docket sheet entry describing the guilty plea, the

conviction, and the announced sentence. The docket sheet entry expressly contemplated

the trial court's intent to enter judgment in a separate document, as it stated: "All as per

formal Sentence & Judgment to be prepared and filed." The "formal" judgment was not

entered until February 22, 2019.6

 4
 Though Rule 74.01(a) addresses judgments entered in civil cases, it includes language that is nonetheless
instructive, as it provides that "[a] judgment is rendered when entered. A judgment is entered when a writing
signed by the judge and denominated 'judgment' or 'decree' is filed." (Emphasis added.)
 5
 Even then, to be a final judgment that can be appealed, a judgment of conviction must resolve all criminal
counts before the court, leaving nothing for further adjudication. State v. Waters, 597 S.W.3d 185, 189 (Mo. banc
2020) ("A judgment of conviction is not final so long as any count in an indictment or information remains pending
before the circuit court.")
 6
 Although there is no corollary for Rule 74.01, (which is applicable to civil cases), in the Rules of Criminal
Procedure, it is nonetheless noteworthy that Rule 74.01(a) provides that a docket sheet entry will not constitute the

 9
 Thus, no judgment of conviction or sentence was "entered" in Wynes's case until

February 22, 2019, when the formal Judgment was filed. According to the plain

language of Rule 24.035(b), Wynes had 180 days from the date his sentence was entered

to file his Motion, and Wynes timely did so by filing the Motion on August 20, 2019.

 Though Wynes responded to a question on Criminal Procedure Form No. 40

which asked when his sentence was "imposed" by noting the date "2-20-2019," that is not

controlling. First, "imposed" is not necessarily synonymous with "entered" as defined by

Rule 74.01(a). Technically, Wynes's response to the Form 40 question is arguably

correct, as Wynes's sentence was "imposed" (that is, announced), during the February 20,

2019 sentencing hearing. Though Wynes's Motion was required to include facts

permitting a determination of timeliness, Wynes sustained his burden to prove the

timeliness of his Motion as he was afforded a hearing, and the record in the motion court

necessarily included the file stamp on the Motion and the underlying Judgment in the trial

court record.7

 Similarly, it is not controlling that the Rule 24.035 Judgment found that Wynes

"was sentenced on February 20, 2019," a statement that is technically correct, as sentence

was announced on that date during the sentencing hearing. The Rule 24.035 Judgment

did not find that Wynes's sentence was entered on February 20, 2019, and made no

findings whatsoever on the subject of the timeliness of Wynes's Motion.

entered judgment in a case if "the docket sheet entry indicates that the court will enter the judgment in a separate
document," in which case "[t]he separate judgment shall be the judgment when entered." Rule 74.01(a).
 7
 Best practices would suggest modification of Criminal Procedure Form No. 40 to require a pro se movant
to identify when the judgment of conviction was entered, instead of asking the movant to identify when sentence
was "imposed." That is especially so as the question on the form does not warn or advise the pro se movant that the
response will be used to gauge the timeliness of the motion.

 10
 Wynes's Motion was timely filed. The State's request to dismiss Wynes's appeal is

denied.

Points on Appeal and Standard of Review

 We turn our attention to the merits of Wynes's points on appeal. Wynes argues in

his first point that the motion court erred in denying the Motion because Wynes's guilty

plea was not voluntary as it was made under duress. In his second point, Wynes argues

that the motion court erred in denying the Motion because trial counsel was ineffective in

failing to advise Wynes that the lesser-included offense of voluntary manslaughter could

have been submitted to the jury.

 Our review of the denial of a Rule 24.035 motion is limited to determining

whether the motion court's findings of fact and conclusions of law are clearly erroneous.

Rule 24.035(k). "'A judgment is clearly erroneous when, in light of the entire record, the

court is left with the definite and firm impression that a mistake has been made.'" Davis

v. State, 486 S.W.3d 898, 905 (Mo. banc 2016) (quoting Swallow v. State, 398 S.W.3d 1,

3 (Mo. banc 2013)). "The motion court's findings are presumed correct." Id. (citing

Johnson v. State, 406 S.W.3d 892, 898 (Mo. banc 2013)). This court "defers to 'the

motion court's superior opportunity to judge the credibility of witnesses.'" Id. (quoting

Barton v. State, 432 S.W.3d 741, 760 (Mo. banc 2014)).

Point One

 In his first point, Wynes seeks to withdraw his guilty plea because it was not

voluntary as he was under duress at the time of the plea. "A claim that a guilty plea was

not knowingly and voluntarily entered is a claim that the conviction violates the

 11
constitution and laws of this state or the constitution of the United States and, thus, falls

within the claims enumerated in Rule 24.035(a)." Id. at 856-57. Wynes was therefore

required to assert his post-sentencing request to withdraw his guilty plea in his Motion.

Id. at 857.

 Here, Wynes's Motion identified two alleged sources of duress: a nonspecific

threat made at an unspecified date and time by a person named Matt Abul to Wynes and

to members of Wynes's family; and a threat made by Victim to Wynes's father in June of

2015. During the hearing on his Motion, Wynes presented no evidence addressing the

threat made by Matt Abul, rendering that assertion in his Motion abandoned.

"Allegations in a post-conviction motion are not self-proving." Cole v. State, 223 S.W.3d

927, 931 (Mo. App. S.D. 2007) (quoting Nunley v. State, 56 S.W.3d 468, 470 (Mo. App.

S.D. 2001)). "It is well-settled that a movant's failure to present evidence at a hearing to

provide factual support for a claim in his or her post-conviction motion constitutes an

abandonment of that claim." Id. at 932 (quoting Watson v. State, 210 S.W.3d 434, 438-

39 (Mo. App. S.D. 2006)).

 With respect to the purported threat by Victim, Wynes and his father testified that

sometime before Victim was murdered, Victim threatened Wynes's father with a gun.

Wynes's father testified that the incident occurred in June 2015. Victim had called

Randall Wynes to tell him to come get Wynes because Wynes was having a seizure.

Randall Wynes had to drive around to find the car the men were in because Victim could

only give a vague description of their location. Randall Wynes found Victim and Wynes

passed out in a car sitting across the street from Randall Wynes's home in Liberty,

 12
Missouri. The driver's side door was open. When Randall Wynes walked up to the car,

Victim roused, and pointed a gun at Randall Wynes demanding to know who he was.

Randall Wynes told Victim he was Wynes's father, at which point Randall Wynes

retrieved Wynes (who was still passed out). Randall Wynes testified that he did not

know that it was Victim who threatened him with a gun until he "pieced it together later .

. . after all this started going down." Randall Wynes also testified that he did not tell

Wynes about the fact Victim pulled a gun on him until "just before his guilty plea."

 The motion court found that Wynes did not sustain his burden to show that he was

under duress at the time of his guilty plea because Randall Wynes "testified that he didn't

know who ha[d] threatened him until after [] [V]ictim had already been shot." Since

Randall Wynes did not tell Wynes about the encounter with Victim until just before

Wynes's guilty plea, Wynes could not have felt threatened or coerced to enter a guilty

plea by Victim's alleged threat, as the Victim was already dead by that time.

 The motion court also found that Wynes's claim of duress was expressly refuted

by the record. The motion court noted that during the guilty plea hearing, Wynes

answered "No" when asked whether he or any member of his family, friends, or relatives

had "been threatened or coerced in any manner to cause you to plead guilty here today."

And Wynes answered "Yes" when asked to confirm that he was making his plea of guilty

"freely, voluntarily, and simply because you are guilty as charged." The motion court

was free to disbelieve Wynes's contrary assertion in the Motion. Couch v. State, 611

S.W.3d 605, 614 (Mo. App. E.D. 2020) ("The motion court 'is free to believe or

 13
disbelieve the testimony of any witness, including the movant.'" (quoting Tate v. State,

461 S.W.3d 15, 24 (Mo. App. E.D. 2015))).

 Wynes has not demonstrated that the motion court's findings are clearly erroneous.

As a result, the motion court's denial of Wynes's claim that his guilty plea was not

voluntary because it was given under duress was not clearly erroneous.

 Point One is denied.

Point Two

 In his second point, Wynes argues that the motion court committed error when it

denied the Motion because trial counsel was ineffective in failing to advise Wynes that a

lesser-included offense of voluntary manslaughter could have been submitted to the jury

in a jury trial.

 "To be entitled to post-conviction relief for ineffective assistance of counsel, a

movant must show by a preponderance of the evidence that his or her trial counsel failed

to meet the Strickland test in order to prove his or her claims." Davis, 486 S.W.3d at

905-06 (citing Strickland v. Washington, 466 U.S. 668 (1984)). "Under Strickland,

Movant must demonstrate that: (1) his trial counsel failed to exercise the level of skill and

diligence that a reasonably competent trial counsel would in a similar situation, and (2)

he was prejudiced by that failure." Id. at 906 (citing Strickland, 466 U.S. at 687).

 "Movant must overcome the strong presumption that trial counsel's conduct was

reasonable and effective." Id. (citing Johnson, 406 S.W.3d at 899). "To overcome this

presumption, a movant must identify 'specific acts or omissions of counsel that, in light

 14
of all the circumstances, fell outside the wide range of professional competent

assistance.'" Id. (quoting Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009)).

 "'To establish relief under Strickland, a movant must prove prejudice.'" Id.

(quoting Johnson, 406 S.W.3d at 899). "Prejudice occurs when 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" Id. (quoting Deck v. State, 68 S.W.3d 418, 429 (Mo. banc

2002)).

 This court need not "address both [Strickland] prongs if the movant has failed to

make a sufficient showing on one." Taylor v. State, 382 S.W.3d 78, 81 (Mo. banc 2012)

(citing Strickland, 466 U.S. at 697). "If the ineffectiveness claim can be disposed of

because of lack of sufficient prejudice, that course should be followed." Id. (citing

Strickland, 466 U.S. at 697).

 Here, the motion court made no findings or conclusions with respect to the

Strickland performance prong. The motion court did not determine whether Wynes

established that trial counsel failed to advise Wynes of the lesser-included offense of

voluntary manslaughter. And the motion court did not determine whether trial counsel's

purported failure to advise Wynes about a lesser-included offense fell outside the range

of professional competence under the circumstances. Instead, the motion court focused

its findings and conclusions on the Strickland prejudice prong. The motion court found

that Wynes did not sustain his burden to establish prejudice as a result of trial counsel's

alleged failure to advise of the possibility of submission of Wynes's case to the jury on a

lesser-included offense of voluntary manslaughter.

 15
 Wynes's point on appeal does not claim error associated with the motion court's

conclusion that Strickland prejudice was not established. Instead, Wynes's point relied

on complains only that it was error to deny his claim of ineffective assistance because

trial counsel failed to advise Wynes of a lesser-included offense. Wynes's point on

appeal focuses solely on the Strickland performance prong about which the motion court

made no findings.8 Wynes's failure to contest the motion court's finding that no prejudice

was established, even presuming trial counsel failed to advise Wynes that a lesser-

included offense could have been submitted to the jury, is fatal to his appeal. Dumler v.

Nationstar Mortgage, LLC, 585 S.W.3d 343, 348 (Mo. App. W.D. 2019) (citing

STRCUE, Inc. v. Potts, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that failure

to challenge a finding or ruling that would support the trial court's judgment is fatal to an

appeal).

 Even if Wynes could overcome this obstacle, we would not find that the motion

court clearly erred when it concluded that Wynes did not establish Strickland prejudice.

The motion court found that Wynes had the obligation to "cite facts not refuted by the

record that, if true, would show that if he had been informed of the possibilities of an

instruction on and conviction of involuntary [sic] manslaughter, he would have foregone

the State's plea offer and would have proceeded to trial." The motion court noted that

 8
 Though the motion court made no findings about the Strickland performance prong in connection with
Wynes's claim of ineffective assistance of counsel, we note that Wynes offered no evidence during his hearing that
trial counsel's alleged failure to advise of a lesser-included offense fell outside the wide range of professional
competent assistance under the circumstances. Nor did Wynes call trial counsel as a witness, or explain trial
counsel's absence as a witness. The motion court was free to disbelieve Wynes's bare assertion that trial counsel
failed to advise him of an available lesser-included offense, particularly in light of Wynes's petition filed to advise of
his intent to enter a guilty plea, where Wynes affirmed that trial counsel had "counseled and advised me on the
nature of each charge, on all lesser-included offenses, if any, and on all possible defenses that I might have in this
case."

 16
absent the plea offer, Wynes would have been required to proceed to trial on the charge

of murder in the first-degree. The motion court found that Wynes "fails to state that but

for the failure of counsel to advise of the lessor-included [sic] to second-degree murder

he would have proceeded to trial as charged of first-degree murder and thus fails to

establish that prejudice occurred." We agree.

 Although Wynes summarily testified during the hearing on his Motion that had he

known of the lesser-included offense of voluntary manslaughter, he would not have pled

guilty to murder in the second-degree and would have insisted on going to trial, Wynes's

Motion made no such assertion, and failed to state any facts addressing prejudice. The

motion court was free to disbelieve Wynes's self-serving testimony during the hearing.

Couch, 611 S.W.3d at 614 ("The motion court 'is free to believe or disbelieve the

testimony of any witness, including the movant.'" (quoting Tate, 461 S.W.3d at 24)).

And the motion court was free to attach significance to the fact that the Motion did not

allege any facts that would support a finding of prejudice. Vogl v. State, 437 S.W.3d 218,

226 (Mo. banc 2014) (observing that a Rule 24.035 movant "must allege facts showing a

basis for relief" and "must prove those allegations" (emphasis in original) (other citations

omitted)). The motion court did not clearly err in concluding that Wynes failed to sustain

his burden to establish prejudice by showing that but for trial counsel's alleged failure to

advise him of a lesser-included offense, he would not have pled guilty and would have

insisted on going to trial. Webb v. State, 334 S.W.3d 126, 128 (Mo. banc 2011) ("To

satisfy the 'prejudice' requirement when challenging a guilty plea, the movant must allege

facts showing 'that there is a reasonable probability that, but for counsel's errors, he

 17
would not have pleaded guilty and would have insisted on going to trial.'" (quoting

Coates v. State, 939 S.W.2d 912, 914 (Mo. banc 1997))).

 In addition, the motion court found that Wynes failed to establish prejudice

because he "failed to pled [sic] any facts that show how 'sudden passion' as contemplated

in the voluntary manslaughter statute arises or applies to his case." We agree.

 Had Wynes not pled guilty and insisted on proceeding to trial, he would have been

tried for first-degree murder as originally charged. Pursuant to section 565.0299

(formerly section 565.025), "[v]oluntary manslaughter under subdivision (1) of

subsection 1 of section 565.023" is a lesser-included offense of first-degree murder.

Section 565.029.2(1)(b). Subdivision (1) of subsection 1 of section 565.023 provides that

a person commits the offense of voluntary manslaughter if he "[c]auses the death of

another person under circumstances that would constitute murder in the second degree . .

. except that he [] caused the death under the influence of sudden passion arising from

adequate cause." Simply stated, the essential element of sudden passion arising from

adequate cause is unique to voluntary manslaughter, and differentiates the charge from

second-degree murder (itself a lesser-included offense of first-degree murder). State v.

Price, 928 S.W.2d 429, 431 (Mo. App. W.D. 1996).

 Nothing in Wynes's statement to the trial court during his guilty plea hearing,

where Wynes explained in his own words the circumstances giving rise to his shooting of

Victim, describes "sudden passion arising from adequate cause." Rather, Wynes

 9
 All statutory references are to RSMo 2016 and are in a form that was in effect at the time Wynes killed
Victim.

 18
acknowledged that it was his intent all along while driving Victim around in a car to

cause Victim some harm because he thought Victim was a snitch. In addition, Wynes

offered no testimony or other evidence during the hearing on his Motion suggesting a

factual basis for "sudden passion arising from adequate cause" that would have supported

submitting a voluntary manslaughter instruction to the jury. Though Wynes has

attempted on appeal to connect the incident where Victim drew a gun on his father to a

basis for submitting a voluntary manslaughter instruction, Wynes's father testified that

Wynes was not told about the incident until just before his guilty plea, and that father did

not even appreciate it was Victim who drew a gun on him until after Wynes killed

Victim. It is axiomatic that Victim's purported threat could not have played a role in

Victim's death as Wynes was not aware of the threat at the time he killed Victim. The

motion court did not clearly err in finding that Wynes failed to establish prejudice

because he never demonstrated that he would have been entitled to a voluntary

manslaughter instruction. Watson v. State, 520 S.W.3d 423, 435 (Mo. banc 2017) ("To

prevail on a claim that counsel was ineffective for failing to request a lesser-included

offense instruction, [Wynes] must demonstrate 'the evidence would have required the

trial court to submit the instruction had one been requested. . . .'" (quoting McCrady v.

State, 461 S.W.3d 443, 448 (Mo. App. E.D. 2015))).

 Point Two is denied.

 19
 Conclusion

 The Rule 24.035 Judgment is affirmed.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 20